## STATE ex GRIFFIN v ZIMMERMAN

Ohio Appeals, 3rd Dist, Hardin Co

No 323. Decided March 22, 1941

Carlos A. Faulkner, Kenton, for complainant-appellant.

Cessna & Cessna, Kenton, for defendant-appellee.

## OPINION

By KLINGER, PJ.

On April 6, 1938, Audrey Griffin gave birth to a bastard child afterwards named Rex Zimmerman. On the 14th day of November, 1939, in the Probate Court, Juvenile Division, of Hardin County, Ohio, the defendant Chester Zimmerman was found and declared to be the reputed father of the illegitimate child Rex Zimmerman, and ordered and adjudged that Chester Zimmerman pay complainant Audrey Griffin, as the reasonable weekly sum for the support and maintenance of the child Rex Zimmerman, the sum of three dollars per week. The court further found as a matter of law that Audrey Griffin, the complainant, was not entitled to be paid by the defendant a reasonable weekly sum for the support and maintenance of said child Rex Zimmerman from the time of its birth April 6, 1938, up to the time said defendant Chester Zimmerman was adjudged the reputed father of said illegitimate child. The complainant excepted to this finding of the court.

The only question presented in this case is whether under the statute, §12123 GC, which became effective May 17, 1938, the court has authority to award to the complainant a reasonable weekly sum, or any sum, for the support of the illegitimate child from the time of its birth to the date of adjudication of its paternity.

In the case of **Beebe v Cowley, 116 Oh St 377**, the supreme court decided that the statute should be strictly construed.

It is true that this proceeding comes under §12123 GC, as amended May 17, 1938.

It is plainly stated that this weekly sum shall be ordered paid after adjudication for the support of the child, from the adjudication until it is eighteen years of age.

The common law affords no remedy to compel a putative father to contribute to the support of his illegitimate offspring. Statutes now exist in Ohio providing for judicial proceedings to establish the paternity of a bastard child and to compel the father to contribute to its support. However, since such proceedings are purely statutory, they must comply strictly and fully with the substance of the statute upon which they depend.

As stated before, under the common law the putative father was not compelled to support or provide for illegitimate offspring and hence the only means available for providing support for illegitimate children is statutory, and as has been held by the Supreme Court of the State of Ohio, these statutes must and should be strictly construed, and since the supreme court, in the case of **Bebee v Cowley, 116 Oh St 377**, held that the statute then in force in Ohio should be strictly construed, when so considered the court was without authority to make an order requiring the reputed father to support the child from the time of its birth until the date of adjudication. **53 Oh Ap 187.**

The legislature, when it amended §12123 GC, in May, 1938, did not see fit to insert that the reputed father should support or pay for the support of the child from the date of its birth until the date of the adjudication establishing the paternity.

We therefore hold that the trial court was correct in not making any allowance for the support of said child from the date of its birth to the date of adjudication.

GUERNSEY, J., concurring.

The common law afforded no remedy to compel the putative father to contribute to the mother of the bastard child any sum necessary for her support, maintainance and necessary expenses caused by pregnancy and childbirth.

The present Bastardy Act is designed to remedy this defect in the common law. **5 O. Jur. 541, 542.** As the Bastardy Act modifies the common law the

right of action under it and the form cf it are wholly dependent upon the statute. 5 O. Jur. 548, 549.

The provisions of the Bastardy Act applicable to the case at bar are contained in §12123 GC, as amended 117 Ohio Laws, effective May 17, 1938, reading as follows:

"(Order of Court when Accused Adjudged Reputed Father; Nonsupport Action).

If, in person or by counsel, the accused confesses in court that the accusation is true or, if the jury find him guilty, he shall be adjudged the reputed father of the illegitimate child if said child is alive, and the court shall thereupon adjudge that he pay to the complainant such sum as the court may find to be necessary for her support, maintenance and necessary expenses, caused by pregnacy and childbirth together with costs of prosecution, and a reasonable weekly sum to be paid complainant for support and maintenance of said child up to eighteen years of age. In the event said child is not born alive, or is not living at the time of said plea or finding of guilty, the court shall order the accused to pay to the complainant such sum as the court may find to be necessary for her support, maintenance and necessary expenses caused by pregnancy, including therein a reasonable amount for maintenance of said child until its death, and its funeral expenses. The court shall require the reputed father to give security for the payment of the support, maintenance and necessary expenses of the complainant caused by the pregnancy and childbirth together with the cost of prosecution. If he neglects or refuses to give it, and pay the costs of prosecution, he shall be committed to the jail of the county, there to remain, except as provided in the next following section, until he complies with the order of the court. On the judgment of the juvenile court, execution may issue to the sheriff as in cases of judgments for money in the court of common pleas. Provided, how-

ever, that nothing in this section shall be construed as a bar to the prosecution of the accused for failure to support his illegitimate child or children under the provisions of any statute providing for prosecution and punishment for non-support of legitimate or illegitimate children."

Before this amendment the section read as follows:

"Order of Court, when Accused adjudged Reputed Father.—If, in person or by counsel, the accused confesses in court that the accusation is true or, if the jury find him guilty, he shall be adjudged the reputed father of the bastard child and the court shall thereupon adjudge that he pay to the complainant such sum as the court may find to be necessary for her support, maintenance and necessary expenses, caused by pregnancy and childbirth together with costs of prosecution. The court shall require the reputed father to give security to perform such order. If he neglects or refuses to give it, and pay the costs of prosecution, he shall be committed to the jail of the county, there to remain, except as provided in the next following section, until he complies with the order of the court. On the judgment of the juvenile court, execution may issue to the sheriff as in cases of judgments for money in the court of common pleas. Provided, however, that nothing in this section shall be construed as a bar to the prosecution of the accused for failure to support his illegitimate child or children under the provisions of any statute providing for prosecution and punishment for non-support of legitimate or illegitimate children." 110 O. L. 296, effective July 30, 1923.

In the case of **State ex rel v Crowley, 116 Oh St 577**, decided April 12, 1927, the supreme court had before it the question as to whether this section in its then form, being the form last above

set forth, authorized the recovery by the complainant for the expenses and time employed by her in the maintenance and care of the bastard child from the date of its birth to the date of the hearing, and held that it did not.

Consequently whatever authority there may be for such a recovery must be found in the provisions added to said section by the amendment which became effective in 1938, subsequent to said decision.

A comparison of the provisions of the section before and after the amendment mentioned, discloses that the section in the form it was passed upon in the Crowley case, supra, authorized the court to make an order providing for the payment of the same items irrespective of whether the child was alive or dead at the time of the adjudication, while the amended form of the section authorizes the court to make orders providing for the payment of two different sets of items some of which are common to both sets dependent upon whether the child is alive or dead at the time of the adjudication; and that provisions are added by the amendment authorizing the court, upon the confession of the accused in open court or upon the jury finding him guilty, if the said child is alive, to adjudge the accused the reputed father of the illegitimate child and to thereupon adjudge that he pay the complainant, in addition to the items prescribed by the section before the amendment, "a reasonable weekly sum to be paid complainant for support and maintenance of said child up to eighteen years of age." The added provisions further prescribe that: "In the event said child is not born alive, or is not living at the time of said plea or finding of guilty, the court shall order the accused to pay to the complainant such sum as the court may find to be necessary for her support, maintenance and necessary expenses caused by pregnancy, including therein a reasonable amount for the maintenance of said child until its death, and its funeral expenses."

It will be noted that the legislature, in the enactment of the amended section, adopted apt words to prescribe that the order of court should provide for the payment by the accused to the complainant of "a reasonable amount for the maintenance of said child until its death in the event said child is not born alive, or is not living at the time of said plea or finding of guilty", but no such similar apt words are used to prescribe that the order shall provide any payment by the accused to the complainant for the support or maintenance of the child from the time of its birth until adjudication in case the child is alive at the time of the adjudication, the only provision relating to the support of the child if it be alive at the time of the adjudication being that the court shall adjudge "a reasonable weekly sum to be paid complainant for support and maintenance of said child up to eighteen years of age." This phrase, considered in connection with the other provisions of the section, and the absence of any words or phrases indicating a contrary intention clearly establishes the intention on the part of the legislature that such adjudication as to payment for support and maintenance shall operate prospectively from its date for support furnished subsequent thereto.

The statute therefore does not authorize the court to order the accused to pay the complainant any sum or amount by way of reimbursement or otherwise for the support of the child from the date of its birth until the adjudication where the child is alive at the time of adjudication, and the authority of the court to order any payments being wholly dependent upon the statute the court did not err in rejecting evidence tending to prove the expense of the maintenance of said illegitimate child from the date of its birth to the date of the adjudication, and in holding as a matter of law that the accused was not liable therefor, and as these are the only assigned errors the judgment will be affirmed.

CROW. J.. dissenting.

The interpretation of §12123 GC, as held by the majority is in my opinion clearly wrong inasmuch as when there is a finding of guilty if the child be then alive the judgment shall include "a reasonable weekly sum to be paid complainant for support and maintenance of said child up to eighteen years of age". not partial nor limited support and maintenance, there being no language to indicate other than continuous support and maintenance from birth to eighteen years of age unless the words "weekly sum" have that effect so as to make the period begin at the date of judgment when guilt has been established.

Do the words "weekly sum" fix the time when the support of a living child shall begin, or do they prescribe the method of payment for such support? That ambiguous feature of the statute presents the only question in this case.

The case of State ex rel v Cowley, 116 Oh St 377, cited in the majority opinion, holds no point of relevancy to the controversy here present. The statute under consideration there contained nothing which justified any allowance to be paid the mother by the father of an illegitimate child for its support. The trial court included in the judgment following the establishment of guilt an amount for the maintenance and care of the child from the date of its birth to the date of the judgment which was a period of about twelve and a half months, the trial court holding such allowance as well as attorney fees for prosecuting the bastardy proceeding to be within "necessary expenses caused by pregnancy, and childbirth."

The supreme court and the court of appeals decided that the statute there under consideration, imposed no obligation on the father to support in any degree the illegitimate child, he being chargeable only with the mother's support, maintenance and necessary expenses caused by her pregnancy and childbirth none of which items comprehended support of the child.

In the supreme court's opinion not one word was said regarding a period to be covered by allowance for support and maintenance of the child for the logical reason that there could not be any such allowance.

The trial court's anomalousness in limiting the period for the child's support by the father only to the time of judgment and not also until its maturity, can be fittingly compared to its erroneousness in deciding that the statute then existing provided for any allowance.

Construing the words "weekly sum" in connection with the related language, it must be borne in mind that payment in installments has actually become a very large, highly important and apparently permanent part of American economics.

The contract for such method of payment may properly cover any form of indebtedness or other liability arising prior to, as well as concurrently with, its making; indeed it is a very generally used· plan for funding past liabilities or obligations whose payment is impossible, impractical or inexpedient.

By now the courts should take notice of the facts just mentioned, which facts were doubtless in the legislative mind as well as was the additional fact that gross payments if required, could not be made in many of the cases.

Judicial instances of payment in installments, abound in cases for alimony pending the suit, wherein the judgment may and generally does properly embrace allowance in addition to current requirements and reasonable probable future items, such past matters as attoney fees, expenses incident to preparation of trial, and support of the spouse from the commencement of the suit. And judgments in cases for permanent alimony may be and often are appropriately payable in installments rather than in a lump sum.

It is of extreme importance in interpreting the part of the statute in con-

troversy providing for weekly-payment to observe the provision in the instance of a child born alive but not living at the time of establishment of guilt, that the judgment shall embrace a reasonable amount for maintenance of the child until its death. Since support of the child by the father until it is eighteen years old, is now of the essence of a bastardy proceeding, why the statutory provision for it from birth to death before judgment, and omit from that judgment a proper sum for maintenance of the child during the period from birth to the pronouncement of the judgment in cases where the child is living at the latter event? Is it reasonable to hold that such a situation was in the mind of the legislature when the statute was passed? In the 116 Oh St 377 case, supra, more than a year had elapsed between the time of the child's birth and the date judgment was entered in the trial court.

The judgment of the majority in the instant case constitutes judicial legislation, namely the injection into the statute of words plainly not there in actuality or by implication, as fixing for the beginning of the weekly sum as of the date of the judgment on the establishment of guilt.

Such a construction as the majority has made clearly leads to both injustice and absurdity by reason of delay attending procedure in bastardy cases, an impressive example of which existed in the case just cited.

Construction of doubtful provisions of a statute must always be the avoidance if possible of injustice, hardship, unfairness, unreasonableness or absurdity, 37 O. Jur. 642, which rule I hold requires reversal of the judgment and the remanding of the cause for a new trial and further proceedings including ascertainment and adjudication of the reasonable value of the support and maintenance of the child prior to judgment as well as the reasonable probable value thereafter until the child becomes eighteen years old.