Zimmerman, J.
 

 In our opinion there are two controlling questions for decision: (1) Could plaintiff maintain the bastardy proceeding, and (2) was the evidence produced of a character to make a jury question ?
 

 Section 12110, General Code, provides:
 

 “When an unmarried woman, who has been delivered of or is pregnant with a bastard child, makes a complaint in writing, under oath, before a justice of
 
 *309
 
 the peace, or in Juvenile Court charging' a person with being the father of such child, the judge or justice thereupon shall issue his warrant, directed to any sheriff, police officer or constable of the state, commanding him to pursue and arrest such accused person in any county therein, and bring him forthwith before such judge or justice to answer such complaint.”
 

 In the instant case, plaintiff filed her complaint against defendant when she was pregnant and unmarried. Under statutes similar to ours it has been held that if a woman is unmarried (without a lawful husband) at the time of filing her complaint and is unmarried at the birth of the child, she may maintain a bastardy proceeding. 14 A. L. R., 976
 
 et seq.,
 
 annotation. See 5 Ohio Jurisprudence, 551, Section 9; 7 American Jurisprudence, 682, Section 84;
 
 Moore
 
 v.
 
 Smith,
 
 178 Miss., 383, 172 So., 317;
 
 Johnson
 
 v.
 
 State,
 
 55 Neb., 781, 76 N. W., 427.
 

 In
 
 Powell
 
 v.
 
 State, ex rel. Fowler, supra,
 
 (84 Ohio St., 165, 95 N. E., 660, 36 L. R. A. [N. S.], 255), it seems to have been assumed that a divorced woman, whose child was conceived during the existence of the marital status but was born after the divorce, could, as an unmarried woman, properly file under our statutes a complaint in bastardy and proceed thereon.
 

 We conclude that Section 12110, General Code, as worded, permitted plaintiff to maintain the present proceeding. In passing, we observe that defendant did not contest plaintiff’s right in the trial court to prosecute the action.
 

 The discussion now leads to the case of
 
 Powell
 
 v.
 
 State, ex rel. Fowler, supra,
 
 for more critical attention. The two paragraphs of the syllabus of that case read:
 

 “1. Every child begotten in lawful wedlock is presumed in law to be legitimate.
 

 “2. Before such child can be adjudged a bastard
 
 *310
 
 the proof must be clear, certain and conclusive, either that the husband had no powers of procreation, or the circumstances were such as to render it impossible that he could be the father of the child. ’ ’
 

 No fault can-be found with the first paragraph; it is universally recognized as the law. However, a majority of the court is of the opinion that the second paragraph should be re-examined, especially in the light of modern scientific developments. Such paragraph states a proposition of law nearly as rigid as the ancient English rule that unless the husband was absent from the realm — “beyond the four seas” — at any time during the pregnancy of the wife, the presumption in favor of legitimacy was conclusive. Experience showed this rule to be too strict, and such doctrine has been abandoned. The rule now generally recognized in England and this country is that nonaccess between husband and wife need not.be shown beyond any possible doubt; but the presumption of legitimacy being highly favored, proof of nonaccess must be clear and satisfactory,' though not conclusive. 1 Jones on Evidence in Civil Cases (4 Ed.), 162
 
 et seq.,
 
 Sections 93 and 94.
 

 In the note appearing in 36 L. R. A. (N. S.), at page 255, the author states:
 

 ‘ ‘ There has been considerable conflict upon the question as to whether the presumption [of legitimacy] can be rebutted only by proof which shows that it is impossible that the husband is the father of the child, or whether proof that it is merely improbable is sufficient.
 

 “The great weight of authority Supports the rule that access, that is an opportunity for sexual intercourse, need not be shown to have been impossible, and where an opportunity for sexual intercourse is shown, the presumption favoring legitimacy, while very strong, is not conclusive, and may be rebutted by show
 
 *311
 
 ing that intercourse did not in fact take place; but the proofs should be clear and convincing.”
 

 Again, in 7 A. L. R., annotation, page 333, it is said:
 

 “The weight of authority is to the effect that intercourse [between husband and wife] need not be shown to have been impossible, and where an opportunity for sexual intercourse is shown, the presumption of legitimacy may be rebutted by proving that intercourse did not, in fact, take place.”
 

 At page 337 of the same volume the annotator comments :
 

 “At least two jurisdictions adhere to the rule that the question to be presented to the jury is not whether the husband and the wife did in fact have intercourse, but whether the bare possibility of intercourse presented itself to them at any time. If it did, then, unless impotency can be shown, the presumption is conclusive.”
 

 Immediately following the foregoing quotation is the citation of the Ohio case of
 
 Powell
 
 v.
 
 State, ex rel. Fowler,
 
 and two Virginia eases. A conclusive presumption may be defined as an inference which the law makes so peremptory that it may not be overcome by any contrary proof, however strong.
 

 Another pertinent statement is contained in 7 American Jurisprudence, 655, Section 43, where it is said:
 

 “It is well settled that the presumption of legitimacy of a child born during wedlock is rebuttable, but the authorities are not entirely in harmony with regard to the proof necessary to rebut it. Some courts have expressed the view that the presumption can be rebutted only by proof which shows that it is impossible that the husband is the father of the child. The rule generally obtaining, however, is the one first laid down by Lord Langdale in
 
 Hargrave
 
 v.
 
 Hargrave,
 
 9 Beav. 552, 50 Eng. Reprint, 457, to the effect that such presumption is not to be rebutted by circumstances
 
 *312
 
 which only create doubt and suspicion, but it may be wholly removed by proper and sufficient evidence showing that the husband was impotent; entirely absent, so as to have had no intercourse or communication of any kind with the mother; entirely absent at the period during which the child must, in the course of nature, have been begotten; or present only under such circumstances as afford clear and satisfactory proof that there was no sexual intercourse.”
 

 Of course, it is against public policy to bastardize a child without strong proof of illegitimacy; but the rule announced in the
 
 Powell case
 
 is too stringent and could too often result in a mockery of the truth.
 

 Taking into account the weight of authority and the present-day methods of disproving paternity, the rule in Ohio should be that while every child conceived in lawful wedlock is presumed legitimate, such presumption is not conclusive and may be rebutted by clear and convincing evidence that there were no sexual relations between husband and wife during the time in which the child must have been conceived.
 

 By reason of the strength of the presumption of legitimacy, the degree of proof necessary to overturn such presumption should be more than a preponderance of the evidence as required in most civil cases, and the. rule of clear and convincing evidence would seem appropriate and in accord with the prevailing-concept. See annotation, 128 A. L. R., 720;
 
 Merrick
 
 v.
 
 Ditzler,
 
 91 Ohio St., 256, 110 N. E., 493; 17 Ohio Jurisprudence, 397, Section 313.
 

 Accordingly the second paragraph of the syllabus of the
 
 Powell case
 
 is overruled.
 

 An interesting and important feature of this case was the introduction by plaintiff of the blood-grouping test for the purpose of eliminating Wilbur Johnson as the father of the child. This sort of test is of comparatively recent origin, but medical authorities agree
 
 *313
 
 on its accuracy and reliability to establish nonpaternity in the great majority of instances. In the present stage of development, however, it is of no value in proving paternity.
 

 If in the present case the defendant had had a blood test and his blood had been determined to be type “0,” and such evidence had been introduced, his nonpaternity of the child would have been as well indicated in this respect as was that of Wilbur Johnson. See
 
 Beach
 
 v.
 
 Beach
 
 (C. C. A., D. C.), 114 F. (2d), 479, 131 A. L. R., 804;
 
 State
 
 v.
 
 Damm,
 
 64 S. D., 309, 266 N. W., 667; 1 Wigmore on Evidence (3 Ed.), 610, Sections 165a and 165b; 32 Journal of Criminal Law and Criminology, 458; 16 Southern California Law Review, 177; 16 Tennessee Law Review, 734.
 

 The General Assembly of Ohio was evidently impressed by the worth of the blood-grouping test as an aid in determining nonpaternity, for in 1939 it enacted Sections 12122-1 and 12122-2, General Code.
 

 Section 12122-1 reads in part:
 

 “Whenever it shall be relevant to the defense in a bastardy proceeding, the trial court on motion of the defendant, shall order that the complainant, her child, and the defendant submit to one or more blood-grouping tests to determine whether or not the defendant can be excluded as being the father of the child. * * * In cases where exclusion is established the results of the tests together with the finding of the expert or experts of the fact of nonpaternity shall be receivable in evidence.”
 

 Section 12122-2 provides:
 

 “Whenever it shall be relevant in a civil or criminal action or proceeding to determine the paternity or identity of any person, the trial court on motion, shall order any party to the action and any person involved
 
 *314
 
 in the controversy or proceeding to submit to one or more blood-grouping tests * *
 

 In the absence of statutory approval, we see no good reason why plaintiff in the instant proceeding should have been denied the right, even had the defendant objected, to introduce the testimony as to the findings and result of the blood-grouping test. She was charging another than her former husband with the paternity of her child, conceived while she was still married, and it was essential as a part of her case to exclude her former husband as the father. Although the testimony of the expert who made the blood-grouping test was not conclusive as to the nonpaternity of Wilbur Johnson, it was admissible for whatever weight it might be given in establishing that fact. See
 
 Arais
 
 v.
 
 Kalensnikoff,
 
 10 Cal. (2d), 428, 74 P. (2d), 1043, 115 A. L. R., 163. Compare
 
 State
 
 v.
 
 Wright,
 
 59 Ohio App., 191, 17 N. E. (2d), 428;
 
 State, ex rel. Slovak,
 
 v.
 
 Holod, Jr.,
 
 63 Ohio App., 16, 24 N. E. (2d), 962.
 

 It is our opinion that the trial court did not err in submitting this case to the jury for its determination.
 

 The defendant cannot complain of the general charge, because it was more favorable to him than he had a right to demand. The trial court in effect placed the burden on the plaintiff of proving all elements of the case by
 
 ‘ ‘
 
 clear, certain and conclusive evidence. ’ ’
 

 In an unusual controversy of this kind it is incumbent on the plaintiff to establish by clear and convincing evidence that the child was not attributable to her former husband. If she does not, she loses. If she does, there remains the issue of the guilt of the accused under the bastardy complaint, and this may be resolved against him by a preponderance of the evidence. See 5 Ohio Jurisprudence, 594, Section 47.
 

 
 *315
 
 Counsel for the defendant contends in this court that the testimony of plaintiff and Wilbur Johnson as to nonaccess was incompetent and should have been excluded for the reason that it was against public policy to permit them to deny a child conceived during the existence of their marital status. There was no objection to the testimony at the trial and the question as to its admissibility and competency may not be raised for the first time in a reviewing court.
 
 Patterson
 
 v.
 
 State,
 
 96 Ohio St., 90, 104, 117 N. E., 169, 173, L. R. A. 1918A, 583, 588; 2 Ohio Jurisprudence, 220, Section 192;
 
 Id.
 
 222, Section 194; 70 Corpus Juris, 370, Section 486.
 

 No criticism can be laid at the door of the Court of Appeals as it followed the law as laid down in the
 
 Powell case.
 

 For the reasons stated, the judgment of the Court of Appeals is reversed and that of the Juvenile Court affirmed.
 

 Judgment reversed.
 

 Weygandt, C. J., Hart, Williams and Turner, JJ., concur.
 

 .Matthias and Bell, JJ., dissent.