Matthias, J.
Two questions are presented by the record:
1. The admissibility of evidence of the results of blood-grouping tests to establish the paternity of the defendant.
2. The charge of the court wherein the jury was instructed that not only the complainant but the state of Ohio is interested in the outcome of this case.
Sections 12122-1 and 12122-2, G-eneral Code (118 Ohio Laws, 570, effective September 2, 1939), are as follows:
Section 12122-1. “Whenever it shall be relevant to the defense in a bastardy proceeding, the trial court on motion of the defendant, shall order that the complainant, her child, and the defendant submit to one or more blood-grouping tests to determine whether or not the defendant can be excluded as being the father of the child. The tests shall be made by duly qualified physicians or other qualified persons, not to exceed three, to be selected by the court, and under such restrictions and directions as the court or judge shall deem proper. In cases where exclusion is established the results of the tests together with the finding of the expert or experts of the fact of nonpaternity shall be receivable in evidence. Such experts shall be subject to cross-examination by both parties after the court has caused them to disclose their findings to the court or to the .court and jury. Whenever the court orders such blood-grouping tests to be taken and one of the parties shall refuse to submit to such test, such fact shall be disclosed upon the trial unless good cause is shown to the contrary. In the event such tests have been *336 made prior to the trial, the results thereof shall be receivable in evidence. The court shall determine how and by whom the costs of such examination shall be paid. ’ ’
Section 12122-2. “Whenever it shall be relevant in a civil or criminal action or proceeding to determine the paternity or identity of any person, the trial court on motion, shall order any party to the action and any person involved in the controversy or proceeding to submit to one or more blood-grouping tests, to be made by duly qualified physicians or other qualified persons not to exceed three, to be selected by the court and under such restrictions or directions as the court or judge shall deem proper. In cases where exclusion is established the results of the tests together with the findings of the expert or experts of the fact of non-paternity shall be receivable in evidence. Such experts shall be subject to cross-examination by both parties after the court has caused them to disclose their -findings to the court or to the court and jury. Whenever the court orders such blood-grouping tests to be taken and one of the parties shall refuse to submit to such test, such fact shall be disclosed upon the trial unless good cause is shown to the contrary. The court shall determine how and by whom the costs of such examination shall be paid.”
The question of the applicability of the saintory provisions for the purpose of aiding in the proof of paternity of a defendant in a bastardy proceeding has not heretofore been presented or considered by this court. The case of State, ex rel. Walker, v. Clark, 144 Ohio St., 305, 58 N. E. (2d), 773, presented the question of proof of nonpaternity in a bastardy proceeding, and it was there held that the finding and result of a blood-grouping test made by a qualified expert from the blood of the complainant, the child and one whose *337 nonpaternity was sought to be established was competent for such purpose.
In the course of the opinion in that case it was stated by Judge Zimmerman:
“This sort of test is of comparatively recent origin, but medical authorities agree on its accuracy and reliability to establish nonpaternity in the great majority of instances. In the present stage of development, however, it is of no value in proving paternity. ’ ’
Although that statement may be regarded as dicta in that case it is pertinent here, for we now have the specific question of the competency of blood-grouping tests to prove paternity. Therefore, it may be here repeated that it is established that there is complete accord of experts in biology upon the proposition that results from such blood tests, disclosing a mere possibility of paternity, must be discarded and excluded from evidence as being valueless; and that their admission in evidence is prejudicial.
It cannot be assumed, therefore, that in the enactment of the statutes above quoted there was any purpose on the part of the General Assembly to make competent any such affirmative evidence in such proceedings. By the clear provisions of Section 12122-1, General Code, such blood-grouping tests are < ‘ required or authorized” only “to determine whether or not the defendant can be excluded as being the father of the child,” and it is only “in cases where exclusion is established” that “the results of the tests together with the finding of the expert or experts of the fact of non-paternity shall be receivable in evidence.”
It is to be observed that this same provision appears in both sections of the statute above quoted.
The maxim, expressio unius est exclusio alterius, clearly applies. Over the strenuous objection of the defendant a eoncededly qualified pathologist was per *338 mitted to testify at length as to the results of a bloodgronping test of the oomplainant, her baby and the defendant. His findings were so broad and general that they could not properly be applied in the determination of the paternity of complainant’s child. Under the limitations prescribed by our statutes the evidence should have been excluded. The resulting prejudice was'augmented by the language of the court’s charge wherein, following specific reference to the evidence in regard to the blood-grouping test, the court stated that it “is not to be concluded by you merely by reason of the fact that blood grouping compared favorably and that this accused could be the father of the child.' In other words, the fact alone would not warrant you in finding him the father of this child, that fact alone." (Emphasis supplied.)
That statement, though negative in character, strongly suggested that weight should be accorded such evidence in the determination of the issue submitted. The prejudicial effect of the evidence as thus emphasized by the court’s charge becomes clear.
In regard to the claimed error- in the charge of the court as to the interest of the state in the outcome of the case, it need only be said:
The single issue to be determined by the jury was the question of fact whether the defendant is the-father of complainant’s child. That was the only issue to be submitted to the jury, and the defendant was entitled to have that issue submitted clearly and distinctly without the accompanying extraneous statement in the court’s charge, which is as follows:
“The state of Ohio is interested in that the child: not become a charge- on the community so you see that, it is not only Miss Freeman who is interested in the-outcome of this case but it is also the state of Ohio. ’ ’
The inclusion of such statement in the court’s charge-was erroneous and prejudicial.
*339 For the reasons stated, the judgment', of ■ the' Court of Appeals is reversed and the cause is remanded to •the Court of Common Pleas for further proceedings.

.Judgment reversed.

Weygandt, C. J., Zimmerman, Stewart, Middleton, "Taet and Hart, J J., concur.