THE STATE, EX REL. SATTERFIELD, APPELLEE, *v.*
SULLIVAN, APPELLANT.

(No. 6753—Decided May 1, 1962.)

*Mr. Edward W. Erfurt, Jr.,* for appellee.
*Mr. Edward F. Lynch,* for appellant.

Duffey, P. J. This is an appeal from a judgment for the complainant, appellee herein, in the Domestic Relations Division of the Common Pleas Court in a bastardy proceeding. . Complainant is the mother of a child conceived in wedlock and born after a divorce. Defendant, appellant herein, is the alleged father.

The ultimate issue is, of course, whether the defendant is the father of the child. Where, as here, the mother was married at the time of conception, there is a strong presumption of legitimacy, *i. e.,* that the husband is the father of the child. To establish her case, the mother has the burden (1) of establishing by clear and convincing evidence that the husband is not the father, and (2) of establishing by a preponderance of the evidence that the defendant is the father. *State, ex rel. Walker,* v. *Clark* (1944), 144 Ohio St., 305. While each of these issues must be resolved by the jury, the determination of each is to be based on the entire evidence.

The child was born on October 16, 1959. Evidence as to the date of conception is not clear. The mother's testimony indicates that conception occurred sometime in January or early February 1959. There is no medical evidence with respect to the pregnancy history, but apparently it was a normal one. A pregnancy may normally range anywhere between 8½ and 9½ months, which would also place the conception sometime in January or early February 1959.

Upon review of the record, there is substantial evidence, including testimony of nonparties, to support a finding that defendant and the complainant had sexual relations during January and early February 1959. However, the fact that defendant had such relations obviously does not establish that the husband is not the father. See *Powell* v. *State, ex rel. Fowler* (1911), 84 Ohio St., 165, overruled on other grounds in *State, ex rel. Walker, supra.* As to that question, such evidence can operate at most to corroborate other evidence which the jury could reasonably be entitled to rely upon in finding that the husband is not the father. Therefore, the record here must be examined to determine whether there is other probative evi-

dence which can support a finding of the nonpaternity of the husband.

In weighing the sufficiency of the evidence on that issue, it is well to note that the presumption of legitimacy is based on public policy. It recognizes the legal burden and social stigma cast upon an innocent child when he is bastardized, as well as the responsibilties of two persons who have entered the state of marriage. While Ohio no longer follows the common-law concept of "beyond the seas," or proof of impossibility of the husband's paternity, the burden placed on the complainant by the presumption is designedly a heavy one, which must be met by sufficient probative evidence. See *Sanders* v. *Fleckner* (1950), 59 Ohio Law Abs., 135, and discussions and cases in 128 A. L. R., 713.

In 1958 the husband, Charles Satterfield, was in the armed forces. He obtained a leave, and lived with his wife, the complainant, in October and November of 1958. He then returned to his base. He was separated from the service and arrived in Columbus on January 29, 1959. For several days he stayed at the house of his wife's mother, sleeping there. He admitted that his wife visited in the house at least once while he was there. In response to the question, "Could it have been more than once?," he replied, "It could have been. I could have seen her every day. I saw her once during the day." The complainant admitted that she may have gone to her mother's while her husband was there. Although he obtained his own lodgings about January 31, he remained in Columbus with the possible exception that he thought he might have gone to Tennessee for one day sometime between February 1 and February 9. The complainant commenced divorce proceedings on February 6, 1959. Her husband was served in Columbus on February 9. An uncontested divorce was granted April 18, 1959.

Sometime in April, complainant went to live with Donna Spangler. In June or July she moved to her now ex-husband's home, living there until she went to the hospital to deliver. Her ex-husband took her to the hospital. The admission or registration papers were signed by him as her husband. The complainant filled out a birth certificate form in the hospital and listed her ex-husband as the father of the child. In his deposition he was asked whether she gave his name as the father with

his consent. He answered, "Yes, you could say it was with my consent, yes." In his examination during trial, while admitting the statement in the deposition, he disclaimed having given any consent to being listed as the father. It seems clear that, at the least, he knew he had been so listed.

Charles Satterfield visited the complainant twice a day while she was confined in the hospital. Upon her discharge, she and the baby went to his home and lived there some five or six weeks. She then moved to her mother's.

As to the general access of the husband to his wife, the nature of their marital relationship and their personal attitude toward each other, the only source of evidence in the entire record is the testimony of complainant and her ex-husband. It is fair to observe that the denial of any sexual connection is somewhat self-serving for complainant, and, as to Charles, it is rather clearly to his economic benefit. The same may be observed with respect to the few meager comments in the record by each that they had "broken up," and no longer cared for each other in January and February of 1959.

In many bastardy cases the evidence indicates only a possibility of physical access between husband and wife, i. e., that in terms of time and distance access was possible. The probability of sexual connection is generally refuted under those circumstances by the lack of evidence of any actual access plus the fact of physical separation and proof of hostility in the personal relations of the husband and wife. In a number of cases the hostility in personal relationship has been considered to be strengthened by the fact that a divorce action was pending during the period in which conception occurred. See *Quasion* v. *Friedman* (1959), 110 Ohio App., 166; *Yerian* v. *Brinker* (1941), 33 Ohio Law Abs., 591.

In the instant case there was, by admission of the complainant and her husband, not merely a possibility of access, but the fact of actual physical access under one roof on at least one occasion during the critical period and "it could have been" more. As to their attitude toward each other and their intention to remain apart, it is apparent that they were on reasonably good relations with each other in November of 1958. There is only their own uncorroborated testimony that they then "broke up." From November until they were together in

his home in June or July, there is no corroborating testimony to substantiate the existence of hostility between them, other than the fact of a divorce action commenced in February of 1959. Thereafter they were obviously on good terms with each other. He took her in, cared for her, took her to the hospital, visited frequently during her confinement, allowed or at least did not protest the use of his name as husband and father, and brought her and the baby back to his home.

We have not been cited, nor in our limited research have we found, a case resulting in judgment for the complainant where the husband's actual physical access was shown during the period of conception. Further, the "circumstances * * * over and beyond the express testimony of the parties" relied upon in *Quasion, supra,* and other cases, do not in the present case support a theory that sexual connection between husband and wife was improbable. The burden on the complainant was to prove the husband was not the father by clear and convincing evidence. It is not sufficient to prove that the defendant might equally as well be the father. This case might best be summed up by a statement of Chief Justice Cardozo in the case of *In re Findlay* (1930), 253 N. Y., 1, 170 N. E., 471, "Issue will not be bastardized as the outcome of a choice between nicely balanced probabilities."

We find the verdict of the jury is against the manifest weight of the evidence.

There are numerous other assignments of error. A number of these raise the issue of the denial of a fair trial because of the degree to which the trial judge participated in the proceedings. There are a substantial number of instances in which the trial judge ruled on matters to which no objection had been made, examined witnesses, including the defendant, called and examined a witness which neither party desired to call or examine, and made various observations with respect to testimony or other evidence.

We recognize the right of a court to control proceedings, to clarify ambiguities, and, particularly where there is no counsel, to take steps to insure substantial justice. It is also apparent that the degree of participation which might be justified may vary with the nature of the proceedings. However, in contested proceedings where the parties are represented by coun-

sel, the court's participation must be scrupulously limited lest he become involved, and most particularly in jury trials, lest the judge consciously or unconsciously indicate an opinion on the evidence to the jury. Since a new trial is necessary, we do not feel compelled to pass upon these assignments other than to state that such participation should be scrupulously avoided.

The fifth assignment concerns the admission of a birth certificate into evidence and the court's ruling on the purpose for which it could be offered. We agree with the ruling made.

The seventh assignment complains of the instruction defining the meaning of the burden of clear and convincing evidence. We think it apparent that the instruction requires clarification upon retrial.

The other assignments of error have either not been properly raised or have been sufficiently dealt with.

The judgment of the Common Pleas Court is reversed and the case is remanded with instructions to grant a new trial.

*Judgment reversed.*

Duffy and Bryant, JJ., concur.

Duffy, J., concurring. I concur in the judgment of reversal and remanding for a new trial for the further reason that the record indicates the trial judge participated in the proceedings to such an extent that the parties were precluded from having a fair and impartial trial.

The Supreme Court in the cases of *State* v. *Lawrence,* 162 Ohio St., 412, and *Surgeon* v. *Surgeon,* 165 Ohio St., 233, warned the trial judges against the court's interference in the conduct of the trial and particularly the interrogation of witnesses, and, on the basis of these cases, I believe that a new trial must be ordered.