WEAVER, APPELLEE, *v.* CHANDLER, APPELLANT.

[Cite as Weaver v. Chandler (1972), 31 Ohio App. 2d 243.]

(No. 71-407—Decided March 21, 1972.)

244

*Mr. John G. Poulos,* for appellee.
*Mr. James Kozelek,* for appellant..

WHITESIDE, J. This is an appeal from a judgment of the Franklin County Court of Common Pleas, division of domestic relations in a bastardy action.

Complainant filed her complaint on May 6, 1970, alleging that she was delivered of an illegitimate child on May 16, 1968, of which the defendant is the father. Preliminary proceedings were had and the defendant pleaded not guilty. The case was tried to a jury and conflicting evidence presented. The jury returned a verdict of guilty, finding the defendant to be the father of the illegitimate child. The court, thereafter, held a hearing to determine the amount that the defendant should pay to the complainant for the support of the child. The court ordered defendant to pay complainant $663.42 as expenses, of which $200 had already been paid, and to pay $12.50 per week for the support of the child until the child reaches majority. A judgment was entered for the balance of the expenses and for the support from the date of birth of the child to June 11, 1971, which the court ordered paid at the rate of $5 per week until fully paid.

Defendant appeals and proposes six assignments of error, as follows:

"1. The Trial Court erred in ruling that the marital status of complainant was an issue only in so far as complainant was or was not married at the time the child was conceived and born.

"2. The Trial Court erred in questioning and commenting upon whether or not defendant's witnesses, Vincent Chandler and Otis Glover, claimed to be the father of the child.

"3. The Trial Court erred in making a series of comments before the jury which reflected on the weight, veracity, or other considerations of the testimony and evidence.

"4. The Trial Court erred in admitting inflammatory and prejudicial testimony, over defendant's objection, that

defendant was living with a woman not his wife at the time of the trial.

"5. The Trial Court erred in restricting closing argument to fifteen (15) minutes for defendant.

"6. The Trial Court erred in rendering a support order effective from the date of birth of the child."

Defendant complains because the trial court limited inquiry into the marital status of complainant as to the time that the child was conceived and born. The only other crucial time, under R. C. 3111.01, would be at the time that the complaint was filed. See *Sullivan* v. *Wilkoff* (1939), 63 Ohio App. 269, and *State, ex rel. Fisher,* v. *McKinney* (1949), 55 Ohio Law Abs. 190. The record does not indicate that counsel for defendant, at any time, called this to the attention of the trial court.

While the action cannot be maintained unless the mother was unmarried at the time of the birth of the child, an action is not necessarily precluded if the mother was married at the time of conception, but not at the time of birth. See *State, ex rel. Walker,* v. *Clark* (1944), 144 Ohio St. 305, and *State, ex rel. Hoerres,* v. *Wilkoff* (1952), 157 Ohio St. 286. It has also been held that the marriage of the complainant subsequent to the filing of the complaint does not preclude her from maintaining the action. See *Roth* v. *Jacobs* (1871), 21 Ohio St. 646.

Furthermore, the comment was interjected by the trial court only after the complainant had twice testified she was not married, and stated she never had been married, and never told anyone that she was married. This following a question by counsel for defendant as to whether complainant had ever told anyone that she was going to get married. Thereafter, upon further cross-examination, complainant again testified that she had never been married, not even under a common-law marriage. No evidence whatsoever was offered by defendant to indicate or suggest that complainant had ever been married at any time. Defendant contends that a photograph of complainant wearing a wide band ring on the third finger of her left hand suggests that she was married. Complainant testi-

fied that this was a friendship ring and that the photograph was taken in 1964.

The first assignment of error is not well taken.

In addition to denying having had sexual relations with complainant during the period of conception, defendant offered in defense the testimony of his brother and a friend, both of whom testified to having had sexual relations with the complainant during the period of conception. Complainant testified that she and defendant had had sexual relations on defendant's birthday in the apartment of another brother of defendant. Defendant's brother testified that he had sexual relations with complainant at the third brother's apartment on about the occasion of the defendant's birthday. The trial court did inquire as to whether the testifying brother claimed to be father of the child. The question was not answered at that time but, subsequently, the witness stated he was not claiming to be the father but that he could be. At the request of counsel for defendant, the jury was permitted to view the child with defendant's brother.

The trial court also inquired as to whether defendant's friend claimed to be the father of the child when counsel for defendant requested that the child be brought in "to compare features between this man and the child." The response of the friend was "By no means." Although the complainant denied ever having had sexual relations with either defendant's brother or his friend, predicated upon their testimony the jury was permitted to view the child with each of them. Obviously, it was the intent of defendant to convince the jury that not he, but rather, either his brother or his friend was the father of the child. The comment of the trial court did not constitute prejudicial error. The second assignment of error is not well taken.

While the trial court did make certain statements in ruling upon objections and in limiting testimony to relevant issues, we find no prejudicial error. The comments were not of the nature or degree involved in *State, ex rel. Wise,* v. *Chand* (1970), 21 Ohio St. 2d 113, or *State, ex rel. Satterfield,* v. *Sullivan* (1962), 115 Ohio App. 347.

The fourth assignment of error, likewise, is not well taken. While testimony was admitted that defendant was living with a woman not his wife, the evidence also indicated, through testimony of defendant and the woman involved, that defendant had fathered a child by this woman. We find no prejudicial error in admitting the testimony complained of.

Counsel for defendant first asked for unlimited time for closing argument. The court limited closing arguments to 15 minutes. Counsel for defendant then asked for 30 minutes, indicating that he would try not to use that much time. The court indicated the limit would be 15 minutes. Following a recess, counsel for defendant stated: "In the interest of expediting the proceedings, we both agree to waive closing argument." Defendant relies upon *Dille* v. *State* (1878), 34 Ohio St. 617, wherein it was held to constitute an abuse of discretion to impose a 30-minute limitation upon argument upon counsel for a defendant accused of a felony in a criminal case the trial of which consisted of one-half day's testimony by seven witnesses. However, counsel in that case utilized the one-half hour allotted, and apparently, did not exhaust his arguments. The following comment, at page 620, is of interest:

"In *Weaver* v. *The State,* 24 Ohio St. 584, two days were occupied in taking the testimony, and, during the progress of the trial, the court had adjourned over Christmas day, and also adjourned that one of the jurors might attend the funeral of a relative. The court, against the protest of the defendant's counsel, limited the argument to five hours on each side. The defendant's counsel took twenty minutes in addition, without interruption by the court. It was held that this was not an abuse of the power of control by the court. This holding is still approved, and if even a fourth part of the time that was allowed for argument in that case had been given in this, a majority of the court would hold that the court did not err in this case."

It is quite apparent that the *Dille* case was decided in an era when lengthy closing arguments were the vogue of counsel. Trial counsel today no longer utilize such

lengthy closing arguments. Whether a limitation upon closing argument by the court constitutes prejudicial error can only be determined by an examination of the record and the argument made. Had counsel for defendant utilized the 15 minutes allotted and, at that point, been interrupted by the trial court and not allowed to finish his argument, an issue would arise as to whether there had been an abuse of discretion. However, counsel chose to waive argument entirely. Although counsel now contends that he waived argument because of the limitation of time, he did not so state at the time but, instead, stated that he waived argument "in the interest of expediting the proceedings." The fifth assignment of error is not well taken.

In support of his sixth assignment of error, defendant advances five specific grounds. Defendant contends (1) that there is no statutory authority for ordering support to be paid for a period between the birth of the child and the date the complaint was filed; (2) that even if there were such statutory authority, the trial court abused its discretion in ordering support effective as of the date of birth; (3) that the order of the court is against the manifest weight of the evidence; (4) that complainant is estopped from claiming support for the period prior to the filing of the complaint; and (5) that complainant's failure to bring her action for two years after birth of the child constitutes laches as to the period of time prior to filing of the complaint.

In *State, ex rel. Beebe,* v. *Cowley* (1927), 116 Ohio St. 377, it was held that a court could not award support for the period between the birth of the child and the time of trial. The statute involved (now R. C. 3111.17) was subsequently amended and the pertinent portion reads:

"* * * If the child is alive, the court shall adjudge that he [the accused] pay to the complainant such sum as the court finds necessary for her support and maintenance, and the necessary expenses caused by pregnancy and childbirth, together with costs of prosecution, and that a reasonable weekly sum be paid complainant for support and maintenance of the child until he becomes eighteen years of age. * * *"

In *State, ex rel. Griffin,* v. *Zimmerman* (1941), 67 Ohio App. 272, the Third District Court of Appeals held that despite the amendment of the statute "the court below was without authority to make an order requiring the reputed father to support the child from the time of its birth until the date of adjudication." In *Willis* v. *Wilson* (1947), 83 Ohio App. 311, the Fourth District Court of Appeals disagreed with this conclusion and referred to an unreported decision of the Ninth District Court of Appeals, which was also in conflict with the decision of the Third District Court of Appeals. In *State, ex rel. Gill,* v. *Volz* (1948), 85 Ohio App. 207, this court considered the issue and held that support payments should commence with the birth of the child. This court stated, at page 214: "There is conflict between our conclusion and the judgment reached in the *Zimmerman* case and we will, if required, make the necessary certificate of conflict to the Supreme Court."

Such certificate of conflict was made and the Supreme Court considered the issue in *State, ex rel. Gill,* v. *Volz* (1951), 156 Ohio St. 60. Although the Supreme Court indicates certification by this court because of conflict with the *Zimmerman* decision, no specific discussion of the issue is found in the opinion or syllabus. However, at page 73, it is stated: "On examination, we do not find any reversible error as to the other assignments by the accused." The judgment of this court was affirmed by the Supreme Court. In the *Gill* case, the proceedings were commenced before the birth of the child. In the *Willis* case, it does not appear whether the complaint was filed before or after birth of the child, but the adjudication was two years after birth. Thus, these cases do not specifically reach the issue contended by defendant that the court cannot order support for a period prior to the date of the filing of the complaint. However, in *State, ex rel Raydel,* v. *Raible* (1954), 69 Ohio Law Abs. 356, the Eighth District Court of Appeals held that it was proper to award support for the child from the date of his birth to the date of adjudication of paternity, relying upon the Supreme Court decision in *Gill.* In that case, the child was born on December 28,

1949, but the complaint was not filed until July 9, 1951, and judgment was entered February 11, 1953. While the issue was not specifically discussed, the court did order support for a period between the birth of the child and the date of the filing of the complaint.

R. C. 3111.01 permits the complaint to be filed after the birth of the child. We find nothing in that section or R. C. 3111.17 which limits recovery of support for the child to a period subsequent to the date of filing the complaint. Accordingly, we conclude that the court has jurisdiction to order support payments to commence with the birth of the child, even though the complaint is filed subsequent to the birth of the child.

With regard to defendant's contentions of an abuse of discretion by the court and that the verdict is against the manifest weight of the evidence, R. C. 3111.17 requires the court to make a determination of support and expenses subsequent to the rendition of the verdict by the jury finding the defendant to be the father of the child. Following the jury verdict, the trial court set a hearing for that purpose for May 27, 1971. The judgment entry recites: "On June 11, 1971, hearing was had * * * to determine the amount that said defendant shall pay to complainant for the support of said child and for such portion of the expenses already accrued in the premises." The transcript of proceedings herein does not include anything with respect to the hearing held on June 11, 1971, nor on any hearing held on May 27, 1971, if one was held on that date. Accordingly, we are not in the position to find that the trial court abused its discretion or that its determination was against the manifest weight of the evidence. From what was before us, which consists of the evidence adduced at trial, plus a transcript of the cross-examination of complainant before a referee on September 17, 1970, with respect to preliminary matters, we are unable to find that the trial court abused its discretion or that its judgment is against the manifest weight of the evidence.

Likewise, the claims of estoppel and laches are not well taken. There is no indication that any of the elements

of estoppel are present. There is no indication of any change in position, reliance, or prejudice to defendant from the delay in filing the complaint. It is true that, upon the jury trial, complainant testified that she delayed bringing the proceedings because as she stated: "When I asked Wallace for money for Jeffrey for certain reasons, for anything, he always gave it to me." Complainant further testified that these payments were made in 1968 and 1969, and when asked about the amount, said: "Not very much. At times maybe $10 or $15 at one time." Defendant, however, denied making such payments. In the absence of the transcript of proceedings for the hearing before the court on June 11, 1971, we are unable to ascertain what was presented to the court with regard to support, and whether or not the issues of estoppel and laches were raised with the trial court. Accordingly, the sixth assignment of error is not well taken.

For the foregoing reasons, all six assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas, division of domestic relations, juvenile branch, is affirmed.

*Judgment affirmed.*

TROOP, P. J., and HOLMES, J., concur.