**FILED**

**June 17, 2020**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 18-0780, *Michael N. v. Brandy M. and Allen M.*

**ARMSTEAD, Chief Justice, dissenting:**

The West Virginia Legislature has clearly recognized that a child born during the course of a marriage is presumed to be a child of such marriage. In West Virginia Code § 48-24-101 (2012), the Legislature explicitly outlined when a party has standing to determine paternity of a child contrary to such presumption. Because the majority opinion has extended a right to Petitioner that is not contemplated by this statute, I am compelled to dissent. Instead of striking down the statute as unconstitutional and requiring the Legislature to correct its infirmities, this Court has simply written its solution into the statute. While I acknowledge that in 1996 this Court determined such statute arguably did not protect a putative biological father's constitutional rights to establish paternity,[1] the Court exceeded its authority by essentially rewriting the statute.

The issue in this matter is whether this Court should allow a man to assert paternity to children born of a woman married to another man. This issue must be viewed in its historical context. "At common law a child born or conceived during marriage was conclusively presumed to be legitimate. *Ray v. Ray*, 219 N.C. 217, 13 S.E.2d 224 (1941). The rule was recognized and applied in *State v. Reed*, 107 W.Va. 563, 149 S.E. 669

---

[1] The entirety of Chapter 48A of the West Virginia Code was repealed and reenacted by the Legislature in 2001. Previously, this statute was codified in West Virginia Code § 48A-6-1 (1993). *Stone* references the prior version of the statute, which remains unchanged after its reenactment and 2002 amendments.

1

(1929)." *State ex rel. J. L. K. v. R. A. I.*, 170 W. Va. 339, 341, 294 S.E.2d 142, 144 (1982). "The common law 'presumption was so absolute that the doctrine of *filiato non potest probaris* applied, and no proofs would be received to dispute the legitimacy of the child.' *Powell v. State*, 84 Ohio St. 165, 95 N.E. 660, 661 (1911), *overruled on other grounds, State ex rel. Walker v. Clark*, 144 Ohio St. 305, 58 N.E.2d 773 (1944)." *Id.*, 170 W. Va. at 342, 294 S.E.2d at 145 (internal footnote omitted). In *J. L. K.*, the Court found that:

> The common law rule can thus be viewed as a protective device for both the child and mother so that the label "bastard" would not stigmatize the child, nor would the mother's reputation be tarnished. Moreover, the common law rule upheld the integrity of the family because it was the family which was the basic social and economic fabric which bound society together.

*Id.*

Over time, the common law has been modified by the Legislature. *See id.*, 170 W. Va. at 341 n.2, 294 S.E.2d at 144 n.2. The present statute at issue provides standing for specific individuals by which a paternity action may be prosecuted:

> (1) An unmarried woman with physical or legal custody of a child to whom she gave birth;
> (2) A married woman with physical or legal custody of a child to whom she gave birth, if the complaint alleges that:
> (A) The married woman lived separate and apart from her husband preceding the birth of the child;
> (B) The married woman did not cohabit with her husband at any time during such separation and that such separation has continued without interruption; and
> (C) The respondent, rather than her husband, is the father of the child;

(3) The state of West Virginia, including the bureau for child support enforcement;
(4) Any person who is not the mother of the child but who has physical or legal custody of the child;
(5) The guardian or committee of the child;
(6) The next friend of the child when the child is a minor;
(7) By the child in his or her own right at any time after the child's eighteenth birthday but prior to the child's twenty-first birthday; or
(8) A man who believes he is the father of a child born out of wedlock when there has been no prior judicial determination of paternity.

W. Va. Code § 48-24-101(e) (2012). This statute was declared unconstitutional, in part, in *State ex rel. Roy Allen S. v. Stone*, 196 W. Va. 624, 474 S.E.2d 554 (1996), but was allowed to stand because this Court:

> recognize[d] the importance of this statute. Therefore, rather than rendering the entire statute unenforceable, we apply the doctrine of the least intrusive remedy and hold that the Due Process Clause of the West Virginia Constitution requires courts to hear and decide, under the guidelines we set out below, paternity actions brought by a putative biological father of a child born to a married woman who is not his wife.

*Stone*, 196 W. Va. at 637, 474 S.E.2d at 567. Like this Court twenty-four years ago, I believe this statute remains important to the well-being of children involved in such cases. The traditional reasons for limiting who may establish paternity still apply today, as do the reasons for the paternity presumption. That importance is not outweighed by a putative biological father's assertion of a right to establish paternity to children who are born to a woman who is married to another. *See id.*, 196 W. Va. at 635, 474 S.E.2d at 565. The majority opinion has again strayed from the bedrock constitutional principle that enacting laws is the province of the Legislature, and that we should apply the clear language of

3

statutes, unless such statutes are unconstitutional. *See* Syllabus Point 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951); Syllabus Point 1, *Dunlap v. State Compensation Director*, 149 W. Va. 266, 140 S.E.2d 448 (1965); Syllabus Point 1, *State v. Elder*, 152 W. Va. 571, 165 S.E.2d 108 (1968); Syllabus Point 2, *Crockett v. Andrews*, 153 W. Va. 714, 172 S.E.2d 384 (1970); *See also Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 587, 466 S.E.2d 424, 438 (1995) ("We look first to the statute's language. If the text, given its plain meaning, answers the interpretive question, the language must prevail and further inquiry is foreclosed.").

> This Court does not sit as a superlegislature, commissioned to pass upon the political, social, economic or scientific merits of statutes pertaining to proper subjects of legislation. It is the duty of the legislature to consider facts, establish policy, and embody that policy in legislation. It is the duty of this court to enforce legislation unless it runs afoul of the State or Federal Constitutions.

*Boyd v. Merritt,* 177 W.Va. 472, 474, 354 S.E.2d 106, 108 (1986).

In *Stone*, this Court asserted the constitutional right of a putative biological father to bring a paternity action. However, instead of declaring the enabling statute unconstitutional and permitting the Legislature to modify it to cure such deficiency, this Court encroached upon the Legislature's authority and rewrote the statute. The Court did so by adding its own language that allow a putative biological father to bring a paternity action:

> Although an unwed father's biological link to his child does not, in and of itself, guarantee him a constitutional stake in his relationship with that child, such a link combined with a substantial parent-child relationship will do so. When an unwed father demonstrates a full commitment to the

responsibilities of parenthood by coming forward to participate in the rearing of his child, his interest in personal contact with his child acquires substantial protection under the Due Process Clause in Section 10 of Article III of the West Virginia Constitution.

Syllabus Point 2, *Stone*. This Court added its own legal framework and essentially "legislated" how a putative biological father could proceed in a paternity suit:

> A putative biological father must prove by clear and convincing evidence the following factors before he will have standing to raise the issue of paternity of a child born to a married woman who is not his wife: (1) that he has developed a parent-child relationship with the child in question, and (2) that the child will not be harmed by allowing the paternity action to proceed.

Syllabus Point 6, *Stone*.

The Court started down a slippery slope by diverging from the express text and the well-established purpose behind the statute. That slope has lead us to the further departure from the statutory language that the majority has now embraced. The majority opinion adds additional language to the statute by finding that special circumstances exist allowing an expansion of *Stone* and holding:

> [A] petition by a putative biological father seeking to establish his paternity over a child who was born while the mother was married to another man satisfies the "special circumstances" exception in Syllabus point 3 of *State ex rel. Roy Allen S. v. Stone*, 196 W. Va. 624, 474 S.E.2d 554, if he is able to clearly and convincingly prove as a threshold matter that a paternal relationship had been initiated and he would have obtained a substantial paternal relationship with the child but was prevented from further development of the relationship due to the conduct of others. To achieve such standing, the putative biological father must allege and prove that he would share in

5

the care of, responsibility for, and support of the child but for the conduct of others that prevented him from doing so. Additionally, the putative biological father must prove by clear and convincing evidence, and in accordance with *Stone*, that the child will not be harmed by allowing the paternity action to proceed. Furthermore, the putative biological father must not be dilatory in bringing the paternity establishment action; he must bring such action within a reasonable time after he knows or should know that there is a basis to believe he is the child's biological father. Finally, we reiterate that these types of matters must always be examined on a case-by-case basis with respect to the specific facts of each case.

*Michael N. v. Brandy M. and Allen M.*, No. 18-0780, slip op. at 25-6, ___ W. Va. ___, ___, ___ S.E.2d ___, ___ (W. Va., June 17, 2020) (internal footnote omitted). None of these newly "legislated" requirements are found in the statute. I firmly believe the statutory issues raised in this matter must be addressed by the Legislature, rather than this Court.

Further, the majority opinion does not adequately address concerns raised by the circuit court regarding the best interests of the children. This Court previously stated in a paternity context that "[o]n numerous previous occasions, this Court has voiced its opinion that the best interests of the child is the polar star by which decisions must be made which affect children." *Michael K.T. v. Tina L.T.*, 182 W. Va. 399, 405, 387 S.E.2d 866, 872 (1989). The circuit court correctly heeded caution in *Stone* that "[i]f the putative father's intrusion into the family, or into an established parent-child relationship, would cause undue disruption and, thus, jeopardize the child's proper development, the court could consider that as a basis for denying relief." *Stone*, 196 W. Va. at 636-37, 474 S.E.2d at 566-67. Accordingly, the circuit court recognized:

Notwithstanding the contention that other children in the [Respondent's] home, from the [Respondent's] prior partners, exist, and that these children and their parents experience the related complexities of those prior relationships, the two children affected by this case do not currently face those obstacles. Nor have they been exposed to questions of whether the only Dad they have known is indeed their biological father.

Based upon this serious concern, the circuit court concluded that Petitioner

does not come to this court with clean hands. Evidence presented in the lower court plainly indicates [Petitioner] was aware that [Brandy M.] was married to another man at the time he engaged in the intimate relationship. He continued with this extra-marital relationship on separate occasions, across an expanse of time. Although he argues he believed [Brandy M.] intended to divorce [Allen M.], when it became obvious that was not her intention, he still chose to participate once again. Clearly, Petitioner lacked due respect for the relationship between the [Respondents], as well as the [Respondents'] family unit. He now disregards any risk of emotional or psychological harm to these children by asserting a claim of paternity and seeking a parental role following a significant period of absence.

While I believe the majority opinion has attempted to provide safeguards regarding the best interest of the children, its expansion of the *Stone* exceptions actually undermines the long-established protections for children contained in the statute. These reasons are precisely why it is the Legislature's duty, rather than the Court's responsibility, to balance all of these interests and reform the statute.

Accordingly, I dissent from the majority's holding that special circumstances exist for this Court to expand upon *Stone*, because I believe such expansion is an improper,

7

Court-ordered, modification of West Virginia Code § 48-24-101(e) and because I believe it undermines the safeguards imbedded in that statute to protect the best interests of the children.