IN RE ADOPTION OF TOTH: TOTH, APPELLEE, *v.* CARMICHAEL, APPELLANT.

(No. 12546 — Decided August 20, 1986.)

*Robert H. McDowall,* for appellee.
*E. Katherine Bertsch,* for appellant.

BAIRD, P. J. This cause came on before the court upon the appeal of Russell Carmichael, defendant-appellant, from the trial court's order adopting the referee's report recommending Carmichael's daughter's adoption over his objections as to its findings of fact and conclusions of law. We reverse and remand.

Russell Carmichael ("Russell") and Sheryl Toth ("Sheryl") were living together on December 15, 1982, when their daughter, Carrie Michele, was born. The parents lived together until June 1983.

Sheryl married Joseph Toth ("Joseph"), plaintiff-appellee, on September 1, 1984. Joseph filed his petition for Carrie's adoption on June 5, 1985. Russell filed objections to the adoption on August 5, 1985. Meanwhile, in April 1985, Russell filed a paternity action to establish himself as Carrie's father.[1] The juvenile court held the paternity action in abeyance

---

[1]Sheryl dismissed her own paternity action in March 1985.

due to the later filing of the adoption petition.

The adoption proceeding was heard by a probate referee, but there is no transcription of this hearing. The referee filed her report, in which she found that Russell was Carrie's father. However, she recommended that Russell's objections be overruled. She concluded that Russell had failed to support or communicate with Carrie; therefore, she concluded Russell's consent to the adoption was not required.

Russell filed objections to the referee's report. The probate court heard argument on these objections. The court overruled the objections and adopted the referee's findings of fact and conclusions of law. Russell appeals.

### Assignments of Error

"I. The trial court erred as a matter of law when it concluded that Russell Carmichael 'failed to communicate' with his daughter.

"II. The trial court's conclusion that there was no justifiable cause for Russell Carmichael's failure to support his daughter is unsupported by clear and convincing evidence."

R.C. 3107.06 sets forth a list of categories of persons whose consent to an adoption is required. On that list appear the following three categories:

"(A) The mother of the minor;

"(B) The father of the minor, if the minor was conceived or born while the father was married to the mother, if the minor is his child by adoption, or if the minor has been established to be his child by a court proceeding;

"* * *

"(F) Subject to division (B) of section 3107.07 of the Revised Code, the putative father, if he:

"(1) Is alleged to be the father of the minor in proceedings brought under Chapter 3111. of the Revised Code at any time before the placement of the minor in the home of the petitioner;

"(2) Has acknowledged the child in a writing sworn to before a notary public at any time before the placement of the minor in the home of the petitioner;

"(3) Has signed the birth certificate of the child as informant as provided in section 3705.14 of the Revised Code;

"(4) Has filed an objection to the adoption with the agency having custody of the minor or the department of public welfare at any time before the placement of the minor in the home of the petitioner, or with the probate court or the department of public welfare within thirty days of the filing of a petition to adopt the minor or its placement in the home of the petitioner, whichever occurs first."

Since he does not qualify as a parent under either category (A) or (B) above, the necessity for Russell Carmichael's consent arises, if at all, out of the putative father category found in subsection (F) above. We note that the record discloses that he signed the child's birth certificate.

Having established whose consent is generally required, the legislature then established definitions of those special circumstances which eliminate the necessity of consent of persons from whom it would otherwise be required:

"Consent to an adoption is not required of any of the following:

"(A) A parent of a minor, when it is alleged in the adoption petition and the court finds after proper service of notice and hearing, that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding either the filing of the adoption petition or the place-

ment of the minor in the home of the petitioner;

"(B) The putative father of a minor if the putative father fails to file an objection with the court, the department of public welfare, or the agency having custody of the minor as provided in division (F)(4) of section 3107.06 of the Revised Code, or files an objection with the court, department, or agency and the court finds, after proper service of notice and hearing, that he is not the father of the minor, or that he has willfully abandoned or failed to care for and support the minor, or abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or its placement in the home of the petitioner, whichever occurs first; * * *." R.C. 3107.07.

These statutes clearly demonstrate a legislative intent to differentiate between a "parent," or "father," on the one hand, and a "putative father," on the other. *In re Adoption of Schwartz* (Jan. 3, 1985), Cuyahoga App. No. 48421, unreported; *In re Adoption of Wilcox* (Mar. 23, 1983), Montgomery App. No 7907, unreported.

Under R.C. Chapter 3107, Russell is Carrie's putative father until he has been adjudicated to be her father (parent) in a paternity action under R.C. Chapter 3111.[2] *In re Adoption of Braden* (Dec. 27, 1985), Lucas App. No. L-85-191, unreported.

Until Russell has been established as Carrie's father, it is impossible for him to have failed to support Carrie "as required by law or judicial decree."

He is not a husband required to support his family pursuant to R.C. 3103.03. He has not been ordered to support Carrie under a paternity judgment pursuant to R.C. 3111.13. *In re Adoption of Braden, supra; In re Adoption of Wilcox, supra;* see *In re Adoption of Foster* (Aug. 21, 1985), Van Wert App. No. 15-84-3, unreported.

The admission by all parties that Russell is Carrie's father has no bearing on his status. Russell could not have forced Sheryl to let him visit Carrie.[3] Similarly, Sheryl could not have forced Russell to pay support until he was determined to be Carrie's father. Accordingly, R.C. 3107.07(A), which relates to parents, has no application to an acknowledged natural father until paternity has been adjudicated. *In re Adoption of Braden, supra; In re Adoption of Schwartz, supra.*

Unless and until Russell is established to be Carrie's father under R.C. Chapter 3111, this adoption should be governed by R.C. 3107.07(B). The order appealed from is reversed and this cause is remanded to the trial court for further proceedings consistent with this decision.

*Judgment reversed and cause remanded.*

GEORGE and HOFSTETTER, JJ., concur.

HOFSTETTER, J., retired, of the Eleventh Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Constitution.

---

[2] R.C. 3111.06(A) provides for original jurisdiction in the juvenile court. The common pleas court has jurisdiction to determine paternity if an action for divorce, dissolution or alimony has been filed in that court. The paternity action, filed by Russell, is still pending in the Summit County Juvenile Court.

[3] In fact, the record reveals that Russell's motion for visitation, apparently filed in Sheryl's paternity action, was dismissed.