IN RE ADOPTION OF SUNDERHAUS.

[Cite as *In re Adoption of Sunderhaus* (1992), 63 Ohio St.3d 127.]

(Nos. 90–2333 and 90–2334—Submitted September 25, 1991—Decided February 26, 1992.)

*Finkelman, Ross & Giuliano, Fred Ross* and *Jeffrey P. Giuliano*, for appellant.

*Paris K. Ellis*, for appellee.

SWEENEY, J. The present controversy concerns the circumstances under which a probate court may dispense with the requirement that the parent of a child consent to her adoption by another. The consent requirement is prescribed by R.C. 3107.06, which provides in relevant part:

"Unless consent is not required under section 3107.07 of the Revised Code, a petition to adopt a minor may be granted only if written consent to the adoption has been executed by all of the following:

" * * *

"(B) *The father of the minor*, if the minor was conceived or born while the father was married to the mother, if the minor is his child by adoption, or *if the minor has been established to be his child by a court proceeding * * *."* (Emphasis added.)

R.C. 3107.07 prescribes certain exceptions to the consent requirement. It provides, *inter alia:*

*"Consent to adoption is not required of any of the following:*

*"(A) A parent of a minor, when* it is alleged in the adoption petition and *the court finds* after proper service of notice and hearing, *that the parent has failed without justifiable cause to communicate with the minor or to provide for the maintenance and support of the minor as required by law or judicial decree for a period of at least one year immediately preceding* either *the filing of the adoption petition* or the placement of the minor in the home of the petitioner.

"(B) The putative father of a minor if the putative father fails to file an objection with the court, the department of human services, or the agency having custody of the minor as provided in division (F)(4) of section 3107.06 of the Revised Code, or files an objection with the court, department, or agency and the court finds, after proper service of notice and hearing, that he is not

the father of the minor, or that he has willfully abandoned or failed to care for and support the minor, or abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or its placement in the home of the petitioner, whichever occurs first * * *." (Emphasis added.)

The ability to dispense with the consent requirement under R.C. 3107.07(A) is dependent upon two factors: (1) the establishment of the parent-child relationship, and (2) the failure to satisfy the support obligation arising therefrom. Thus, R.C. 3107.07 must be read *in pari materia* with the other applicable provisions of R.C. Title 31. Parentage may be established through a judicial admission or default pursuant to R.C. 3111.08(B), or as the result of a contested action pursuant to R.C. 3111.12. The support obligation arising from a paternity determination arises from operation of R.C. 3111.13(C), which provides:

*"The judgment or order may contain any other provision* directed against the appropriate party to the proceeding, *concerning the duty of support,* the furnishing of bond or other security for the payment of the judgment, or any other matter in the best interest of the child. The judgment or order shall direct the father to pay all or any part of the reasonable expenses of the mother's pregnancy and confinement. *After entry of the judgment or order, the father may petition for custody of the child or for visitation rights in a proceeding separate from any action to establish paternity.* * * * " (Emphasis added.)

Appellant contends that the determination of the paternity of appellee on June 13, 1989 reverts back to the birth of the child on December 16, 1986. However, this contention is at variance with the plain meaning of R.C. 3107.07 as read *in pari materia* with R.C. Chapter 3111. R.C. 3107.07(A) obviates the necessity of *parental* consent if support has not been paid for one year prior to the filing of the adoption petition. However, the parentage of appellee and the support obligation arising therefrom were not determined until June 13, 1989—over six months *after* the filing of the petition for adoption.[1] Instead, appellant contends that the parentage determination should be imputed to appellee as of the date of the birth of the child. Appellant would therefore

---

1. Conversely, the paternity action was instituted prior to the filing of the petition for adoption and the parentage of appellee was established prior to the date that the petition for adoption was granted by the probate court. Accordingly, any reference to the statutory provisions governing the rights of the putative father of the minor is unnecessary. See R.C. 3107.06(F) and 3107.07(B).

attach legal effect to an event the significance of which was not determined until nearly three years after its occurrence.[2]

In support of his argument that the establishment of the paternity of appellee should be applied retroactively, appellant maintains that such paternity was "acknowledged" at the time the child was born. This contention, however, was controverted by the natural mother in her response to the complaint to establish paternity filed by appellee. The most that can be said concerning the circumstances surrounding the birth of Jaclyn is that appellee "believed" that he was her father at the time. It is not uncommon for such beliefs to be later proven unfounded. See *Hulett v. Hulett* (1989), 45 Ohio St.3d 288, 544 N.E.2d 257. This in no small measure accounts for the decision by the General Assembly to eschew such casual "factual" determinations and instead require judicial ascertainment of paternity.[3]

Appellant further contends that the burden was upon appellee to establish his paternity and support obligation at an earlier date. However, the natural mother likewise had it within her power to begin the period of nonsupport with the filing of a paternity complaint. Inasmuch as the mother and prospective adoptive father seek to rely upon R.C. 3107.07(A) to divest appellee of his parental rights, the obligation is upon them to establish the paternity of appellee and to demonstrate his nonsupport of the child from that point forward. The one-year period of nonsupport presumes that a duty of

---

2. In this regard, the one-year period of nonsupport prescribed by R.C. 3107.07(A) is not unlike the four-year statute of repose for medical malpractice actions contained in R.C. 2305.11(B) and considered by this court in *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717, *Hardy v. VerMeulen* (1987), 32 Ohio St.3d 45, 512 N.E.2d 626, and *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 514 N.E.2d 709. In *Mominee*, the court concluded that R.C. 2305.11(B), as applied to minors, violated the due course of law provision of Section 16, Article I of the Ohio Constitution inasmuch as the statute operated to extinguish the cause of action of a minor prior to the date upon which he was legally entitled to assert his malpractice claim (*i.e.*, the date upon which he reaches the age of majority).

This constitutional imperative was further underscored in *Hardy, supra,* at 47, 512 N.E.2d at 628, wherein the court remarked:

"If the legislature may not constitutionally enact an unreasonable statute of limitations, it follows that the legislature cannot deprive one of a right before it accrues."

A similar constitutional dilemma would be created were this court to interpret R.C. 3107.07(A) in such a manner as to authorize the extinguishment of parental rights prior to the date upon which parentage and the support obligation attendant thereto were determined. However, our disposition of the present controversy on statutory grounds renders it unnecessary for us to consider whether the interpretation of R.C. 3107.07(A) urged by appellant would violate Section 16, Article I of the Ohio Constitution.

3. This distinction is illustrated by a comparison of the provisions governing a judicial determination of paternity contained in R.C. 3111.08(B) and 3111.12 with the less stringent standards governing the demonstration necessary to establish one as a "putative father" from whom consent to the adoption is not required pursuant to R.C. 3107.07(B).

support existed at the time the period began to run. Reliance upon the exception to the consent requirement contained in R.C. 3107.07(A) necessitates that the party so doing initiate the action required to render the exception applicable.[4] Moreover, in construing R.C. 3107.07(A), this court is "properly obliged to strictly construe * * * [its] language to protect the interests of the non-consenting parent who may be subjected to the forfeiture or abandonment of his or her parental rights." *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 366, 18 OBR 419, 424, 481 N.E.2d 613, 619. Accordingly, a party filing a petition for adoption who relies upon R.C. 3107.07(A) bears the burden of establishing by clear and convincing evidence that the exception to the consent requirement contained therein has been satisfied. See *In re Adoption of Bovett* (1987), 33 Ohio St.3d 102, 515 N.E.2d 919; *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 23 OBR 330, 492 N.E.2d 140; *In re Adoption of Gibson* (1986), 23 Ohio St.3d 170, 23 OBR 336, 492 N.E.2d 146.

Additionally, basic procedural due process requires that, in order for a person to forfeit his rights, he must be on notice that his rights are in jeopardy. This is especially so where parental rights are involved. See *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599, 606; *Little v. Streater* (1981), 452 U.S. 1, 13, 101 S.Ct. 2202, 2209, 68 L.Ed.2d 627, 637; *Lassiter v. Dept. of Social Services* (1981), 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640. Interpreting R.C. 3107.07(A) as requiring a paternity determination prior to the running of the one-year period comports with the requirements of due process and the plain meaning of its provisions.

We therefore conclude that an unmarried parent is subject to the support obligation to which R.C. 3107.07(A) refers only where a paternity determination has been rendered pursuant to R.C. 3111.08(B) or 3111.12. Accordingly, the one-year period of nonsupport prescribed by R.C. 3107.07(A) which obviates the requirement to obtain parental consent to an adoption pursuant to R.C. 3107.06 commences on the date that parentage has been judicially established.

The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

---

4. It is, of course, axiomatic that an exception to a rule of general application is to be narrowly construed. See *Assn. for the Defense of the Washington Local School Dist. v. Kiger* (1989), 42 Ohio St.3d 116, 118, 537 N.E.2d 1292, 1293; *State, ex rel. Natl. Broadcasting Co., v. Cleveland* (1988), 38 Ohio St.3d 79, 84, 526 N.E.2d 786, 790; *Faith Fellowship Ministries, Inc. v. Limbach* (1987), 32 Ohio St.3d 432, 434, 513 N.E.2d 1340, 1342.

MOYER, C.J., HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

RESNICK, J., dissents.

HOLMES, J., concurring. My initial preference was to join the position of Justice Resnick in dissent; however, in review of the case law in this state, I have concluded that the common law did not afford a remedy to compel a putative father to contribute to the support of his illegitimate offspring.[5] Furthermore, the law as announced by this state's intermediate appellate courts has been to the effect that a reputed father of an illegitimate child is *not* legally and/or financially responsible for the maintenance of the child, unless there is a statute which imposes such a duty.[6]

Historically, it has been recognized that the mother of a child born out of wedlock is its natural guardian and she possesses the legal right to the custody, care, and control of such child superior to that of the alleged father. See *In re Adoption of Toth* (1986), 33 Ohio App.3d 265, 267, 515 N.E.2d 950, 952; former R.C. 3103.03 and 3111.02. Moreover, the mother is legally responsible for the support of the child. Conversely, the legal obligation of a putative father to support his illegitimate child arises *only* by way of statute, *i.e.*, R.C. Chapter 3111, which specifically provides for the procedure to establish parentage.

R.C. 3111.13(A) provides that, following a hearing of the parentage proceeding, "[t]he judgment or order of the court determining the existence or nonexistence of the parent and child relationship is determinative for all purposes." Additionally, R.C. 3111.15(A) supports the theory that the legal obligations of the putative father do not arise until a parentage determination is made, by stating:

"If the existence of the father and child relationship is declared or if paternity or a duty of support has been adjudicated under sections 3111.01 to 3111.19 of the Revised Code or under prior law, the obligation of the father may be enforced in the same or other proceedings by the mother, the child, or the public authority that has furnished or may furnish the reasonable expenses of pregnancy, confinement, education, support, or funeral, or by any

---

5. See *State, ex rel. Beebe, v. Cowley* (1927), 116 Ohio St. 377, 379, 156 N.E. 214, 215, where this court stated that a "reputed father of a bastard child is not legally and financially responsible for its maintenance unless there is a statute imposing such a duty upon him." See, also, *State, ex rel. Griffin, v. Zimmerman* (1941), 67 Ohio App. 272, 21 O.O. 253, 36 N.E.2d 808; *State, ex rel. Davis, v. Brown* (C.P.1951), 60 Ohio Law Abs. 183, 98 N.E.2d 99.

6. See *In re Adoption of Toth* (1986), 33 Ohio App.3d 265, 267, 515 N.E.2d 950, 952 (It is impossible for a putative father to have failed to support his child until he has been ordered to do so pursuant to a paternity judgment.); *Baugh v. Carver* (1981), 3 Ohio App.3d 139, 3 OBR 157, 444 N.E.2d 58.

other person, including a private agency, to the extent that any of them may furnish, has furnished or is furnishing these expenses."

Therefore, I join the majority in concluding that a putative father is only subject to support obligations when a proper judgment has been entered pursuant to R.C. 3111.08(B) or 3111.12(D) or 3111.13, and that the one-year period of non-support set forth in R.C. 3107.07(A), which obviates parental consent, commences on the date paternity or the child-father relationship is established.

Accordingly, for the reasons expressed above, I must concur.

ALICE ROBIE RESNICK, J., dissenting. I respectfully dissent from the majority decision because James L. Zimmerman's duty to support Jaclyn Sunderhaus commenced at the time he signed the birth certificate. By signing the birth certificate, Zimmerman admitted that he was the biological father of Jaclyn. All rights and responsibilities were triggered at that time. The trial court found that the father's refusal to pay support because the mother refused him visitation was merely a rationalization for his behavior. Additionally, the fact that in a pleading the mother suggested that Zimmerman was not the father is immaterial. His duty to support began at the time he acknowledged that the child was his, and that duty remained in full force.

Hence, Zimmerman failed to support the child for at least one year immediately preceding the filing of the adoption petition and, therefore, his consent did not have to be obtained for adoption purposes. I would reverse and reinstate the judgment of the trial court.