IN RE ADOPTION OF P.A.C.

[Cite as *In re Adoption of P.A.C.*, 126 Ohio St.3d 236, 2010-Ohio-3351.]

*When an issue concerning parenting of a minor is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child — The determination of a parent-child relationship in the juvenile court proceeding must be given effect in the stayed adoption proceeding.*

(No. 2009-1757 — Submitted May 25, 2010 — Decided July 22, 2010.)

APPEAL from the Court of Appeals for Hamilton County, No. C-081149, 184 Ohio App.3d 88, 2009-Ohio-4492.

_____

PFEIFER, J.

{¶ 1} In *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, this court stated, "The issue presented for our review is whether a probate court must refrain from proceeding with the adoption of a child when an issue concerning the parenting of that child is pending in the juvenile court. We hold that, in such circumstances, the probate court must defer to the juvenile court and refrain from addressing the matter until adjudication in the juvenile court." Id. at ¶ 8. We consider our holding in *Pushcar* to be dispositive of the issue before us and reverse the judgment of the court of appeals.

**Facts and Procedural History**

{¶ 2} In July 2005, while married to Jeremy Tuttle, Susan Tuttle ("Tuttle") gave birth to P.A.C. Although Jeremy Tuttle was listed as P.A.C.'s father on her birth certificate, he is not her biological father. A DNA test conducted in August 2005 determined that appellant, Gary D. Otten, is P.A.C.'s biological father.

**{¶ 3}** In January 2007, Otten filed a complaint for allocation of parental rights in juvenile court in Clermont County. Shortly thereafter, Tuttle filed a parentage action against Otten. These cases were consolidated, and a hearing was set for March 26, 2007, but was continued at Tuttle's request. Tuttle, who was divorced from Jeremy Tuttle in November 2005, married appellee, Kevin Michael Crooks, on April 13, 2007. On April 20, 2007, Crooks filed a petition to adopt P.A.C. in probate court in Hamilton County.

**{¶ 4}** The probate court stayed the adoption proceedings pending a determination in the parentage action. The juvenile court determined that Otten was the biological father of P.A.C. The probate court lifted its stay, determined that a parent, Otten, did not consent to the adoption, as required by R.C. 3107.06, and dismissed Crooks's adoption petition. On appeal, the court of appeals reversed, concluding that Otten's failure to register with the Putative Father Registry was dispositive. We accepted Otten's discretionary appeal.

**Analysis**

**{¶ 5}** "[T]he right of a natural parent to the care and custody of his children is one of the most precious and fundamental in law." *In re Adoption of Masa* (1986), 23 Ohio St.3d 163, 164, 23 OBR 330, 492 N.E.2d 140, citing *Santosky v. Kramer* (1982), 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599. *Santosky* has been characterized as "requiring a clear and convincing evidence standard for termination of parental rights because the parent's interest is fundamental but the State has no legitimate interest in termination unless the parent is unfit, and finding that the State's interest in finding the best home for the child does not arise until the parent has been found unfit." *Cruzan v. Dir., Missouri Dept. of Health* (1990), 497 U.S. 261, 319, 110 S.Ct. 2841, 111 L.Ed.2d 224 (Brennan, J., dissenting).

**{¶ 6}** "Few consequences of judicial action are so grave as the severance of natural family ties." *Santosky*, 455 U.S. at 787, 102 S.Ct. 1388, 71 L.Ed.2d 599

(Rehnquist, J., dissenting). Because adoption terminates fundamental rights of the natural parents, "we have held that '* * * [a]ny exception to the requirement of parental consent [to adoption] must be strictly construed so as to protect the right of natural parents to raise and nurture their children.' " *In re Adoption of Masa*, 23 Ohio St.3d at 165, 23 OBR 330, 492 N.E.2d 140, quoting *In re Schoeppner* (1976), 46 Ohio St.2d 21, 24, 75 O.O.2d 12, 345 N.E.2d 608. With "a family association so undeniably important * * * at stake," we approach the case before us "mindful of the gravity" of the circumstances and the long-term impact on all the concerned parties. *M.L.B. v. S.L.J.* (1996), 519 U.S. 102, 117, 117 S.Ct. 555, 136 L.Ed.2d 473. We turn now to our most recent pronouncement in this important and contentious area of the law.

### *In re Adoption of Pushcar*

{¶ 7} In *Pushcar*, the child's mother married a man who was not the biological father of the child, and that man attempted to adopt the child. 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647. The natural father, who had not yet been determined to be the father, opposed the adoption, and the issue was whether his consent was necessary. We concluded that the father could not be shown to have failed to communicate with or failed to support his child for one year pursuant to R.C. 3107.07(A) until one year had elapsed from the time his paternity was established. Id. at ¶ 14. An integral part of our analysis was our holding that the probate court could not proceed with the adoption while "an issue concerning the parenting of that child is pending in the juvenile court." Id. at ¶ 8.

{¶ 8} Although the case involved a relatively narrow issue, our holding was more general, as memorialized in the syllabus: "When an issue concerning parenting of a minor is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child." It is clear that we did not intend our holding or analysis to be restricted to parenting issues implicated by R.C.

3107.07(A). Rather, our use of general language shows that we intended the holding to apply to all parenting issues pending in a juvenile court.

*Application of Pushcar*

{¶ 9}  We consider it beyond dispute that when, as here, a man files an action for allocation of parental rights supported by a DNA test that declaims the probability that he is the father to be 99.99995 percent and when the mother of the child files an action to determine parentage claiming that that man is the father of the child, "an issue concerning parenting of a minor is pending." Accordingly, the probate court properly stayed the adoption proceedings before it.

{¶ 10} The probate judge in this case correctly determined that we would not have required the stay in *Pushcar* if it were to have no effect. The judge stated:

{¶ 11} "[T]he Supreme Court [in *Pushcar*] did not strictly construe the statutory requirement that, to be considered a 'father' under RC 3107.06(B)(3), paternity must have been established *prior to the date the adoption petition was filed*.

{¶ 12} "This is apparent because, despite the fact that the paternity action was *pending* in *Pushcar* when the adoption petition was filed, and thus, paternity was not established *prior to the filing of the adoption petition*, the Supreme Court did not find that it was too late for the paternity action to render the man contesting the adoption a 'father' under RC 3107.06(B)(3)." (Emphases sic.)

{¶ 13} Based on this analysis, the probate judge concluded as follows: "*Pushcar* applies to the instant case; * * * under *Pushcar*, this Court was required to refrain from proceeding with the adoption petition until the Clermont County Juvenile Court's adjudication of the parentage action; * * * this Court should give effect to the Clermont County Juvenile Court's determination of the existence of a parent-child relationship; and that given said determination of paternity, Mr.

Otten's status is that of 'father.' "  We conclude that the probate judge properly applied *Pushcar*.

### Conclusion

**{¶ 14}** The probate judge did not err.  We reverse the judgment of the court of appeals.

Judgment reversed.

LUNDBERG STRATTON, O'CONNOR, and O'DONNELL, JJ., concur.

BROWN, C.J., and LANZINGER and CUPP, JJ., dissent.

_____

**LUNDBERG STRATTON, J., concurring.**

**{¶ 15}** I write separately to emphasize that appellate courts in Ohio must adhere to App.R. 11.2(C)(1), which requires that an appellate court expedite an appeal from an order granting or denying adoption or the termination of parental rights.  In this case, oral argument in the court of appeals was set for May 6, 2009, and the court's judgment was not journalized until September 2, 2009 – almost four months later, despite the rule's requirement that "[t]he court shall enter judgment within thirty days of * * * the oral argument, * * * unless compelling reasons in the interest of justice require a longer time."  App.R. 11.2(C)(5).  This appeal was pending in the appellate court for a period of ten months from the initial filing of the notice of appeal on November 10, 2008, until the judgment entry on September 2, 2009.

**{¶ 16}** App.R. 11.2(A) requires appellate courts to accelerate and prioritize these appeals at all stages.  While these cases are pending, the children whose lives are at issue lack a sense of permanency.  They may be forging a bond that will be difficult to disrupt should a court require the child's placement to change.  In a case such as this one, a court should be ever cognizant of the timeliness of its docket.

O'DONNELL, J., concurs in the foregoing opinion.

_____

**BROWN, C.J., dissenting.**

{¶ 17} Before a child can be adopted, R.C. 3107.06 requires that certain persons and entities consent to the adoption. These persons include the mother of the child, the father of the child, and, if applicable, the putative father of the child. R.C. 3107.06. R.C. 3107.01(H) defines "putative father"[1] and R.C. 3107.06(B) defines "father"[2] for the purposes of the adoption statutes.

{¶ 18} Although consent is generally required from the persons enumerated in R.C. 3107.06, R.C. 3107.07 sets forth exceptions to the consent requirements. R.C. 3107.07(A) allows a court to find parental consent unnecessary when the parent has failed without justifiable cause to provide more than de minimis contact with the minor or to provide for the maintenance and support of the minor for a period of at least one year immediately preceding the

---

1. {¶ a} A "putative father" is defined as a man who may be a child's father and to whom all of the following apply:

{¶ b} "(1) He is not married to the child's mother at the time of the child's conception or birth;

{¶ c} "(2) He has not adopted the child;

{¶ d} "(3) He has not been determined, *prior to the date a petition to adopt the child is filed*, to have a parent and child relationship with the child by a court proceeding pursuant to sections 3111.01 to 3111.18 of the Revised Code [parentage statutes], a court proceeding in another state, an administrative agency proceeding pursuant to sections 3111.38 to 3111.54 of the Revised Code [administrative-determination-of-paternity statutes], or an administrative agency proceeding in another state;

{¶ e} "(4) He has not acknowledged paternity of the child pursuant to sections 3111.21 to 3111.35 of the Revised Code." (Emphasis added.) R.C. 3107.01(H).

2. {¶ a} A "father" is a man to whom any of the following apply:

{¶ b} "(1) The minor was conceived or born while the father was married to the mother;

{¶ c} "(2) The minor is his child by adoption;

{¶ d} "(3) *Prior to the date the petition was filed*, it was determined by a court proceeding pursuant to sections 3111.01 to 3111.18 of the Revised Code [parentage statutes], a court proceeding in another state, an administrative proceeding pursuant to sections 3111.38 to 3111.54 of the Revised Code [administrative-determination-of-paternity statutes], or an administrative proceeding in another state that he has a parent and child relationship with the minor;

{¶ e} "(4) He acknowledged paternity of the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code." (Emphasis added.) R.C. 3107.06(B).

filing of the adoption petition or the placement of the minor in the home of the petitioner.

{¶ 19} Under R.C. 3107.07(B)(1), a putative father's consent is unnecessary when he fails to register as the minor's putative father with the Putative Father Registry not later than 30 days after the minor's birth. R.C. 3107.07(B)(2) states that a putative father's consent is not required when the court finds, after proper service of notice and hearing, that the putative father (1) is not the father of the minor, (2) has willfully abandoned or failed to care for and support the minor, or (3) has willfully abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor or the minor's placement in the home of the petitioner, whichever occurs first.

{¶ 20} In the case before us, the primary issue is whether appellant Gary Otten's consent to the adoption is required. It is undisputed that Otten failed to register with the Putative Father Registry. Accordingly, application of R.C. 3107.07(B)(1) to Otten would serve to render his consent unnecessary.

{¶ 21} In order to avoid application of R.C. 3107.07(B)(1), Otten seeks to change his status in the adoption proceeding from putative father to father after the adoption petition has been filed. Otten contends that if a judicial proceeding to establish paternity has been filed in juvenile court prior to the filing of an adoption petition in probate court, the adoption proceeding must be stayed until the paternity proceedings are completed. Otten further contends that the juvenile court's paternity determination must be used by the probate court to determine the status and rights of the respective parties in the adoption proceeding. In the case of Otten, this would require the probate court to apply the more stringent exception to consent to adoption contained in R.C. 3107.07(A) and avoid application of R.C. 3107.07(B)(1).

{¶ 22} The majority agrees with Otten and holds that the adoption proceedings must be stayed pending completion of the juvenile court paternity

7

proceedings, that the juvenile court's finding of paternity must be recognized by the probate court, and that Otten's new status as "father" rather than "putative father" requires that the probate court apply the consent-to-adoption exception contained in R.C. 3107.07(A). In so holding, the majority fails to apply the unambiguous language of the relevant adoption statutes, erroneously relies on *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, and contravenes the express adoption policy established by the General Assembly.

**Statutory language**

{¶ 23} The majority's opinion ignores the unambiguous statutory language that requires that participants' status be determined at the time an adoption petition is filed.

{¶ 24} The definition of "putative father" specifically provides that a man is a putative father if "[h]e has not been determined, *prior to the date a petition to adopt the child is filed*, to have a parent and child relationship" with the child through a court or administrative proceeding. (Emphasis added.) R.C. 3107.01(H). Similarly, the definition of "father" under R.C. 3107.06(B)(3) provides that to establish a parent-child relationship through court or administrative proceedings, the court or administrative determination must be completed "[p]rior to the date the [adoption] petition was filed." In other words, when an adoption petition is filed, the statutes require the status of the parties involved to be ascertained *at that time*.

{¶ 25} The statutes are absolutely clear that the child may be adopted without a putative father's consent when he fails to register with the Putative Father Registry or to establish a parent-child relationship through one of the judicial or administrative means set forth in R.C. 3107.06(B) before the adoption petition is filed. Nothing in the adoption statutes provides for a stay of the

adoption proceedings to allow for the filing of or completion of pending actions to establish paternity.

### *Pushcar*

{¶ 26} The majority relies upon this court's previous decision in *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, to support its holding in this case. But the majority's reliance on *Pushcar* is misplaced.

{¶ 27} *Pushcar* addressed the need for a stay of adoption proceedings when the party petitioning for adoption relies on R.C. 3107.07(A) to divest a father of his parental rights. This court held that in order for the R.C. 3107.07(A) exception to consent to apply, the petitioner must prove paternity, and a stay of the adoption proceeding was necessary to allow for the juvenile court to complete the proceedings to establish paternity. The adoption petition in this case did not allege that Otten's consent was not required under R.C. 3107.07(A), but instead asserted that Otten's consent was unnecessary based upon R.C. 3107.07(B). Therefore, there is no need to establish paternity for the purposes of R.C. 3107.07(A) and the reasoning of *Pushcar* is inapplicable to the facts currently before the court.

{¶ 28} More importantly, *Pushcar* failed to address the relevant statutory language of the adoption statutes regarding the time at which a participant's status is determined and was based in large part upon this court's decision in *In re Adoption of Sunderhaus* (1992), 63 Ohio St.3d 127, 585 N.E.2d 418, which was decided prior to the creation of the Putative Father Registry and the enactment of the accompanying amendments to the adoption statutes. Am.Sub.H.B. No. 419, 146 Ohio Laws, Part III, 4660. In *Sunderhaus*, this court found that the ability of a court to dispense with the consent requirement under R.C. 3107.07(A) is dependent upon the establishment of a parent-child relationship and that

establishing the parent-child relationship requires a judicial ascertainment of paternity. Id. at 130.

{¶ 29} This analysis is consistent with the statutory scheme in place at the time.[3] At the time *Sunderhaus* was decided by this court, the only statutorily available method for an unwed natural father to establish a parent-child relationship was through a judicial proceeding. By relying on *Sunderhaus*, *Pushcar* failed to recognize that new, alternative statutory methods existed for an unwed biological father to establish a parent-child relationship in addition to a judicial determination.

{¶ 30} The *Pushcar* majority's reliance on *Sunderhaus* is further called into question given the unclear nature of the facts of *Pushcar*. *Pushcar*'s facts suggest that the natural father already had an established parent-child relationship prior to the filing of the juvenile court proceedings. *Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, at ¶1, 4. It is also unclear in *Pushcar* whether the juvenile court proceeding was initiated to establish a parent-child relationship judicially or to enforce the natural father's visitation rights based upon his established parent-child relationship. Id.

{¶ 31} Because the analysis of *Pushcar* fails to address the relevant statutory provisions, relies upon *Sunderhaus*, and is based on factual circumstances that are unclear from the opinion, I find that *Pushcar*'s holding is of limited value and should not be extended beyond the R.C. 3107.07(A) context.

### The General Assembly's adoption policy

{¶ 32} The majority's holding is also contrary to the public policy clearly expressed in the current adoption statutes. Justice Cupp's dissent correctly sets

---

3. At the time, R.C. 3107.06 provided that a father's consent to adoption was required "if the minor was conceived or born while the father was married to the mother, if the minor is his child by adoption, or if the minor has been established to be his child by a court proceeding." Am.Sub.H.B. No. 790, 142 Ohio Laws, Part III, 5323, 5333.

forth the legislative history and objectives of the 1996 amendments to Ohio's adoption statutes.

**{¶ 33}** The express legislative direction contained within the adoption statutes requires determination of the status of the participants at the time the adoption petition is filed. This advances the goals of the 1996 amendments to the adoption statutes by avoiding the delays inherent in allowing ancillary litigation regarding status to complete before considering the adoption petition. While the majority may disagree with the statutory scheme and its potentially harsh result in these circumstances, it is not this court's place to disregard clear statutory language to come to a result that the majority finds more equitable in this case. This court should respect the policy decisions made by the General Assembly in enacting the amended adoption statutes and apply the statutory language as written.

### Conclusion

**{¶ 34}** Otten failed to register with the Putative Father Registry and also failed to establish a parent-child relationship before the adoption petition was filed. Therefore, Otten is a putative father for the purposes of the adoption proceedings and the consent-to-adoption exception set forth in R.C. 3107.07(B)(1) applies to him. Staying the probate court's adoption proceedings for a juvenile court proceeding to establish paternity is inappropriate in light of the clear directive of the adoption statutes and unnecessarily delays adoption proceedings contrary to the intent of the General Assembly.

**{¶ 35}** For the foregoing reasons, I would affirm the judgment of the First District Court of Appeals.

_____

**LANZINGER, J., dissenting.**

{¶ 36} I respectfully dissent based on the statutes as currently written; however, I do not agree with Chief Justice Brown that *In re Adoption of Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, has no application here.

{¶ 37} A "putative father" is "a man, including one under age eighteen, who may be a child's father and to whom all of the following apply:

{¶ 38} "(1) He is not married to the child's mother at the time of the child's conception or birth;

{¶ 39} "(2) He has not adopted the child;

{¶ 40} "(3) He has not been determined, *prior to the date a petition to adopt the child is filed*, to have a parent and child relationship with the child by a court proceeding pursuant to sections 3111.01 to 3111.18 of the Revised Code, a court proceeding in another state, an administrative agency proceeding pursuant to sections 3111.38 to 3111.54 of the Revised Code, or an administrative agency proceeding in another state;

{¶ 41} "(4) He has not acknowledged paternity of the child pursuant to sections 3111.21 to 3111.35 of the Revised Code."  (Emphasis added.)  R.C. 3107.01(H).

{¶ 42} A putative father's consent to an adoption of a minor child is required unless (1) he has failed to register as the minor's putative father with the Putative Father Registry established under R.C. 3107.062 not later than 30 days after the minor's birth or (2) he has willfully abandoned or failed to care for and support the minor or willfully abandoned the mother of the minor during her pregnancy and up to the time of her surrender of the minor, or the minor's placement in the home of the petitioner, whichever occurs first.  R.C. 3107.06(C) and 3107.07(B).

{¶ 43} Although Otten filed a parentage action to determine whether he had a parent-child relationship with P.A.C., that action had not concluded when the adoption petition was filed.  Therefore, under the plain language of R.C.

3107.01(H), Otten remains within the definition of "putative father" and his consent is not required, because he failed to timely register as a putative father. R.C. 3107.07(B)(1).

{¶ 44} Although *Pushcar*, 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, requires that the adoption proceedings be stayed during the juvenile court proceeding, that does not change the fact that Otten's consent is not required. Even though the stay allowed the juvenile court to determine that Otten is P.A.C.'s father, R.C. 3107.06(B) states that a father's consent to the adoption must be obtained only if the father satisfies one of the following:

{¶ 45} "(1) The minor was conceived or born while the father was married to the mother;

{¶ 46} "(2) The minor is his child by adoption;

{¶ 47} "(3) *Prior to the date the petition was filed*, it was determined by a court proceeding pursuant to sections 3111.01 to 3111.18 of the Revised Code, a court proceeding in another state, an administrative proceeding pursuant to sections 3111.38 to 3111.54 of the Revised Code, or an administrative proceeding in another state that he has a parent and child relationship with the minor;

{¶ 48} "(4) He acknowledged paternity of the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.821 of the Revised Code."

{¶ 49} Again, because Otten's parentage was not determined prior to the filing of the adoption petition, his consent as a father is not required under R.C. 3107.06(B).

{¶ 50} This does not mean, however, that *Pushcar* has no application here. Before an adoption petition may be granted, the probate court must determine whether the adoption is in the best interest of the minor. R.C. 3107.14(C). Knowing who the biological father is may affect this decision. Therefore, a *Pushcar* stay of the adoption proceeding to allow a previously filed

parentage action to conclude is not futile. Even if a putative father's consent is not required, the ultimate issue is what is in the best interest of the minor. The fact that consent is not required is not a fait accompli as to whether the petition should be granted.

{¶ 51} For the foregoing reasons, I would affirm the judgment of the First District Court of Appeals.

_____

**CUPP, J., dissenting.**

{¶ 52} Our role with regard to statutory interpretation is to apply clear and unambiguous statutes as written and to engage in no further interpretation. *State ex rel. Burrows v. Indus. Comm.* (1997), 78 Ohio St.3d 78, 81, 676 N.E.2d 519. It is our duty to enforce a statute as written and to not add or subtract language from the statute, *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 366, 18 OBR 419, 481 N.E.2d 613. And I agree with Chief Justice Brown's analysis regarding the plain and unambiguous requirements of the statutes applicable to this matter.

{¶ 53} In this case, appellant's consent to the adoption is not required, because he failed to register on the Putative Father Registry and he failed to have determined by a court or administrative proceeding *prior to the date the adoption petition was filed* that he is the biological father or that he had a parent-child relationship with the child. R.C. 3107.06(B), 3107.01(H), and 3107.07(B)(1). In other words, when an adoption petition is filed, the statutes require the status of the parties involved to be ascertained *at that time*. At first glance the result may seem unfair as to appellant. On further reflection, however, it is clear that the legislature intended consequences when a putative father fails to take the proper steps to establish a parent-child relationship. Thus, the statutes are clear that when a putative father so defaults, the child may be adopted without the putative father's consent. R.C. 3107.061.

{¶ 54} I also agree with Justice Lanzinger's conclusion that the holding in *In re Pushcar,* 110 Ohio St.3d 332, 2006-Ohio-4572, 853 N.E.2d 647, should be applied herein. The *Pushcar* syllabus plainly states that "[w]hen an issue concerning parenting of a minor is pending in the juvenile court, a probate court must refrain from proceeding with the adoption of that child." Id. Clearly, the stay required by *Pushcar* applies to this case.

{¶ 55} The majority's application of *Pushcar* to this case, however, takes the *Pushcar* holding too far by permitting a party's consent-to-adoption status to change even *after the adoption petition has been filed, in clear contradiction of the language of the statute.* Expanding *Pushcar* in this way amounts essentially to judicially waiving the requirement that *any* determination that a man is the natural father – for purposes of the adoption proceeding – be made *prior to the time the adoption petition is filed* with the probate court. R.C. 3107.07(B) and 3107.01(H). This extension of *Pushcar* is contrary to both the General Assembly's clear statutory directives and to the public policy clearly expressed in the adoption statutes. That the biological-parent determination must be made before an adoption petition is filed in order to legally fix the necessity of obtaining that person's consent to the adoption, is a mandatory statutory requirement (which the majority seems intent on judicially writing out of the statute). The majority's decision today serves only to undermine the effectiveness of the Putative Father Registry and to upend Ohio's orderly adoption process.

{¶ 56} Ohio's adoption laws were amended in 1996 to streamline the adoption process. Am.Sub.H.B. No. 419, 146 Ohio Laws, Part III, 4660. This statutory enactment had among its primary objectives the establishment of statewide standards for adopting a child and the reduction of the time necessary to finalize an adoption from what was often four years before the statutory change, to between nine and 24 months under the current framework. 64 Ohio Report No. 215, Gongwer News Service, Inc. (Nov. 9, 1995) 6. Another objective of the

legislation was to prevent children from being forcibly removed from their adoptive families after a biological father belatedly exercised parental rights. 64 Ohio Report No. 198, Gongwer News Service, Inc. (Oct. 17, 1995) 1.

{¶ 57} To achieve these goals while also upholding the rights of the natural parents, the child, and the adoptive parents, the General Assembly created the Putative Father Registry and other options for putative fathers to maintain consent-to-adoption rights. Legislative Service Commission Final Bill Analysis, Am.Sub.H.B. No. 419, 121st General Assembly; 65 Ohio Report No. 56, Gongwer News Service, Inc. (Mar. 21, 1996) 6; *In re Adoption of Zschach* (1996), 75 Ohio St.3d 648, 651-652, 665 N.E.2d 1070. After holding open hearings, inviting input from the public and adoption advocates, and reviewing adoption policy, the General Assembly enacted statutes requiring putative fathers to promptly demonstrate their commitment to meeting the responsibilities of parenthood. R.C. 3107.061, 3107.062, and 3107.07(B)(1); *Zschach*, 75 Ohio St.3d at 651-652, 665 N.E.2d 1070. The United States Supreme Court has also sanctioned the use of putative-father registries as mechanisms to facilitate the adoption process. *Lehr v. Robinson* (1983), 463 U.S. 248, 263-264, 266-268, 103 S.Ct. 2985, 77 L.Ed.2d 614.

{¶ 58} As this court has previously observed, the "goal of the adoption statutes is to protect the best interests of children. In cases where adoption is necessary, this is best accomplished by providing the child with a permanent and stable home, and ensuring that the adoption process is completed in an expeditious manner." (Citation omitted.) *Zschach* at 651. The express legislative direction contained within the adoption statutes that requires the status of the biological father to be determined at the time the adoption petition is filed is one that the legislature has determined advances this goal.

{¶ 59} In contrast, the majority's application of *In re Pushcar* to the case now before us is in direct contravention of the clearly expressed requirements of

16

the statute. Without the benefit of the input available to the legislature on the benefits or detriments of any aspect of adoption policy, the majority of this court nullifies the express and specific language of the statutes and overrides the legislature's articulated policy decisions, substituting its own. The 1996 revisions to the adoption statutes were designed to provide more predictability and certainty in the adoption process, with due regard to the rights of the biological parents, and are consistent with the goal of expeditiously moving children through the adoption process into permanent and stable homes. The court's decision today is inconsistent with those objectives and calls into question the viability of any adoption currently in process. In the end, the result of the majority opinion is to excuse appellant's failure to promptly protect his consent-to-adoption rights by demonstrating his commitment to meeting the responsibilities of parenthood in the manner provided by the applicable statutes, and leaves the child in legal limbo.

{¶ 60} Appellant failed to register with the Putative Father Registry and also failed to establish before the adoption petition was filed that he had a parent-child relationship with the child. The decision by the majority to sanction the procedure that stays the probate court's adoption proceedings to allow appellant's consent-to-adoption status to change is not authorized by the adoption statutes and is inappropriate in light of the clear directive of those statutes.

{¶ 61} I must respectfully dissent from this court's holding.

_____

Dworken & Bernstein Co., L.P.A., and Kenneth J. Cahill, for appellant, Gary D. Otten.

Voorhees & Levy, L.L.C., and Michael R. Voorhees, for appellee, Kevin Crooks.

Erik L. Smith, urging reversal as a pro se amicus curiae.

Susan Garner Eisenman and Mary Beck, urging affirmance for amicus curiae American Academy of Adoption Attorneys.

_____