[Cite as *In re Adoption of A.S.*, 2017-Ohio-2814.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
FULTON COUNTY

In re Adoption of A.S.                      Court of Appeals No. F-16-008

Trial Court No. 20164013

**DECISION AND JUDGMENT**

Decided: May 12, 2017

* * * * *

Ian A. Weber, for appellant.

Gary L. Smith, for appellees.

* * * * *

**SINGER, J.**

{¶ 1} Appellant, C.P., appeals the September 28, 2016 judgment of the Fulton County Court of Common Pleas, Probate Division, in which the court found his consent was not required for the adoption of A.S., his daughter. Finding no error, we affirm.

## Assignments of Error

{¶ 2} Appellant sets forth the following assignments of error:

1. The trial court abused its discretion by ruling that [C.P.], who is presumed to be the biological father by acknowledgement of paternity has failed without justifiable cause to provide more than de minimis contact with the minor child, [A.S.] pursuant to R.C. 3107.07, for a period of at least one year immediately preceding the filing of the Adoption when the biological mother intentionally lied to the presumed father that he was not the father as the result of an at home DNA test and whether this was a justifiable reason for the presumed father to stop consistent contact with the minor child.

2. The trial court abused its discretion by denying the presumed father-appellant's motion for D.N.A. testing to determine if he is or is not the biological father of the minor child.

3. The trial court abused its discretion in determining that although the biological mother's conduct was reprehensible in lying to [C.P.] about the DNA test results it was justified under R.C. 3107.07(A) when in fact the biological mother unduly influenced and defrauded [C.P.] by repeatedly stating he was not the father through an at home DNA test and any lack of contact was a direct result of her conduct or statements regarding the test.

**Facts**

{¶ 3} On July 21, 2016, appellees, T.S. and R.S., petitioned the trial court for the adoption of their granddaughter, A.S.

{¶ 4} A.S. was born October 2014. Appellees are the maternal grandparents of A.S., and their daughter, R.S., is the biological mother of A.S ("mother").

{¶ 5} On July 21, 2016, the mother voluntarily consented to and waived notice to the adoption and hearing of A.S. A hearing was set for September 19, 2016. Notice of this hearing was sent to appellant at the Lebanon Correctional Institute, where he was incarcerated as of September 2015.

{¶ 6} The notice to appellant stated that appellees were alleging that his consent was not required due to his unjustifiable failure to provide more than de minimis contact from July 21, 2015, to July 21, 2016, which was for one year preceding the petition for adoption. The notice further informed appellant he would lose his parental rights, "including the right to contact the minor" and the "legal relationship" between him and the minor, "so that the minor thereafter is a stranger to [him] and the minor's former relatives for all purposes." Appellant was given 14 days beyond service to file objection.

{¶ 7} The record reflects that service was perfected, at the Lebanon Correctional Institute, on July 28, 2016. However, there is no evidence of when appellant received the notification.

{¶ 8} Appellant filed his objection and notice of appearance on September 12, 2016, therein requesting a stay of the proceedings and a judicial determination of

3.

paternity. On that same day, appellees responded to appellant's requests arguing that since he signed the child's birth certificate and thereby affirmed he was the biological father, any paternity issue was moot and, therefore, there was no justification for his one-year failure to have contact with the child.

{¶ 9} Appellant then moved the court to appear by video or for a continuance to arrange his appearance. The motion was denied because the court found the request contrary to its policy of not transporting or allowing prisoners to testify in civil matters.

{¶ 10} The hearing was held on September 19, 2016. At the hearing and for appellees, both appellees and their daughter (A.S.'s mother) testified. For appellant, his mother, the presumed paternal grandmother, testified.

{¶ 11} First, appellee-grandmother testified how A.S. lived with them since she was one week old, and that appellees had guardianship since January 2015. Appellee-grandmother stated that, according to her recollection, appellant had not seen his daughter since May 2015. She also said that, as far as she knew, he had not attempted to contact his daughter.

{¶ 12} Then appellee-grandfather testified. He confirmed the facts his wife stated, however, he stated that his knowledge of whether appellant had contacted or tried to contact A.S. was limited. In specific, he stated appellant did not have his phone number and, thus, would not have been able to contact A.S. through him anyway.

{¶ 13} Lastly, for appellees, A.S.'s biological mother testified. She spoke of her and appellant's relationship. She said they began dating around July 2012, and ended the

4.

relationship in February 2015. She stated that around the time they ended it, she told appellant he was not A.S.'s biological father. As a result, the couple decided to order an at-home DNA test to settle the paternity issue.

{¶ 14} The mother testified that she lied to appellant about the DNA test results and led him to believe that he was not A.S.'s biological father, as of April 2015. Her primary rationale for the deception was that she feared for A.S.'s well-being and found appellant to be a "dangerous person."

{¶ 15} Despite the admitted deceit, the mother stated appellant often asked whether he was the father. She also confirmed that he continuously asked about the child's well-being, and that she eliminated interaction between them because she could not afford to accept collect calls from prison.

{¶ 16} She also testified that the presumed, paternal grandmother had not given up on attempting to build or maintain a relationship with A.S., despite being lied to about the at-home paternity test. For example, she stated that in September 2015, the paternal grandmother wanted A.S. to visit appellant in prison for his birthday. The mother refused the visitation and stated in her view a prison was not appropriate for an infant visit.

{¶ 17} After the mother's testimony was complete, appellees concluded their calling of witnesses. Then, on behalf of appellant, his mother was called to testify.

{¶ 18} The paternal grandmother clarified that appellant and A.S.'s mother were engaged to marry. She also expressed how she and her son adored and still adore A.S. She recalled receiving the first indication that A.S. may not have been her biological

5.

granddaughter as early as March 2015. Her recollection was that, up until that point, she and her son were heavily involved in A.S.'s life. She also stated she purchased blood cord storage and funded the baby shower prior to A.S. being born.

{¶ 19} The paternal-grandmother, further, discussed the events of May 25, 2015, which was the day appellees asserted was the last contact appellant had with A.S. She said that she was present and recalls her son holding A.S. She confirmed that she and her son, even up until the day of the September 19, 2016 hearing, were confused and unsure whether A.S. was biologically related to them. Her testimony began to shape the devastation she and her son experienced as a result of, first, feeling hoodwinked about being biologically related to A.S., and then, being strung along for over a year about the DNA test results.

{¶ 20} The paternal grandmother stressed the amount of times she and her son inquired about the test results. She implied that not only A.S.'s mother but, also, appellees, the maternal grandparents, were in on the deceit. She said the maternal grandparents would block her calls and, she stated, the maternal grandmother even went as far as suggesting A.S. call her "Auntie Michelle" one day in light of the child not being her biological granddaughter. Lastly, the paternal grandmother confirmed for the record that she and her son both wanted A.S. to visit prison, to no avail, on his birthday in September 2015.

{¶ 21} The court rendered its judgment on September 28, 2016, finding appellant acknowledged being the biological father and therefore had an obligation to provide at

6.

least de minimis contact with his daughter. The court found he failed in this respect and ordered that his consent was not required. The court also declared his request for judicial determination of paternity moot.

{¶ 22} Appellant filed a timely notice of appeal from the September 28, 2016 judgment.

## Standard of Review

{¶ 23} "The question of whether justifiable cause exists in a particular case is a factual determination for the probate court and will not be disturbed upon appeal unless such determination is unsupported by clear and convincing evidence." *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 613 (1985), paragraph three of syllabus.

## Law and Analysis

{¶ 24} In appellant's first and third assigned errors, he asserts that the trial court erred in finding he unjustifiably failed to provide de minimis contact with A.S. when her mother lied and said he was not the biological father. In the second assigned error, appellant argues the court erred in denying his request for judicial determination of paternity.

{¶ 25} Appellees respond that since appellant was already presumed to be the father; and he, not the mother's deception, was the proximate cause of his failing to contact or maintain the child-parent relationship with A.S.

{¶ 26} Because we find establishing the parental relationship is necessary to address the first and third assigned errors, we address the second assigned error first.

7.

**{¶ 27}** R.C. 3107.07(A) provides that a parent's consent to adoption is not required if the parent fails without justifiable cause to communicate with the minor for a period of at least one year immediately preceding the filing of the adoption petition. *See* R.C. 3107.07(A); *see also In re Adoption of T.M.*, 6th Dist. Sandusky No. S-09-010, 2009-Ohio-5194, ¶ 13. This exception must be strictly construed so as to protect the right of natural parents to raise and nurture their children. *In re Adoption of Schoeppner*, 46 Ohio St.2d 21, 24, 345 N.E.2d 608 (1976).

**{¶ 28}** "The ability of a court to dispense with the consent requirement under R.C. 3107.07(A) is dependent upon the establishment of the parent-child relationship[.]" *In re Adoption of Sunderhaus*, 63 Ohio St.3d 127, 130, 585 N.E.2d 418 (1992).

**{¶ 29}** R.C. 3111.02(A) states "[t]he parent and child relationship between a child and the natural father of the child may be established by an acknowledgment of paternity as provided in sections 3111.20 to 3111.35 of the Revised Code, and pursuant to sections 3111.01 to 3111.18 or 3111.38 to 3111.54 of the Revised Code."

**{¶ 30}** R.C. 3111.03(A)(3) follows with "[a] man is presumed to be the natural father of a child" if "[a]n acknowledgment of paternity has been filed pursuant to section 3111.23 * * *of the Revised Code and has not become final under former section 3111.211[.]"

**{¶ 31}** R.C. 3111.23 provides that the mother, potential father, a child support enforcement agency, a local registrar of vital statistics, or a hospital staff person may, in person or by mail, "file an acknowledgment of paternity with the office of child support

8.

in the department of job and family services, acknowledging that the child is the child of the man who signed the acknowledgment."

{¶ 32} The presumption established under R.C. 3111.03(A)(3), as it relates to this case, "can only be rebutted by clear and convincing evidence that includes the results of genetic testing[.]" *See* R.C. 3111.03(B).

{¶ 33} Here, the record reveals that appellant acknowledged paternity of A.S. on October 9, 2014, which was two days after her birth. This acknowledgement was notarized and filed with job and family services. The filing occurred in time for the Office of Vital Statistics to record appellant's name as father on A.S.'s birth certificate. *See* R.C. 3111.31. Based on the record, and because no evidence was offered to rebut the presumption under R.C. 3111.03(B), we find the parent-child relationship was established between appellant and A.S. Therefore, the trial court did not err in denying appellant's request for judicial determination of paternity. The second assigned error is found not well-taken.

{¶ 34} Next we address whether the court erred in finding appellant failed without justifiable cause to communicate with A.S. from July 21, 2015 to July 21, 2016. *See* R.C. 3107.07(A).

{¶ 35} The finding of the probate court in adoption proceedings "will not be disturbed on appeal unless such determination is against the manifest weight of the evidence." *In re Adoption of Bovett*, 33 Ohio St.3d 102, 515 N.E.2d 919 (1987), paragraph four of the syllabus. A determination is not against the manifest weight of the

9.

evidence when it is supported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 36} Here, appellant has always been the presumed father of A.S., and therefore appellant was entitled to seek his rights as an unmarried father of his child. However, appellant took no legal action to secure his rights prior to the adoption. To the contrary, from May 2015 forward appellant relied on A.S.'s mother's misrepresentation that he was not the biological father. We note that this deception was unconscionable, however, we find the trial court's rationale persuasive on addressing the impact of this deception in its analysis. The court stated:

> The court further finds that [A.S.'s mother]'s deceptive conduct of informing [appellant] that he is not the biological father of the child when she knew that the test results confirmed that he was the biological father was reprehensible at best. However, since the results of this unofficial genetic testing had no bearing on [appellant's] status as a legal father of A.S., coupled with the fact that [appellant] failed to seek an official paternity test through the Fulton County CSEA, and further failed to petition this Court for guaranteed minimum parenting rights, the Court finds that [appellant's] failure to provide more than de minimis contact with A.S. for a period of time between July 21, 2015 through July 21, 2016 was not justifiable.

10.

**{¶ 37}** More specifically, appellant made no attempt to communicate with his child, aside from requesting through his mother that the child visit him in prison. Prior to being incarcerated, appellant did not contact his daughter after May 2015. Appellant was then incarcerated in September 2015 and, thereafter, failed to contact A.S. *See In re Adoption of T.M.*, 6th Dist. Sandusky No. S-09-010, 2009-Ohio-5194, at ¶ 17 ("Ohio courts have consistently held that incarceration alone is not a justifiable reason for failing to communicate with one's child."). Appellant did not send a card, letter, gift, or message, nor did he specifically call A.S. during the relevant time period.

**{¶ 38}** Based on the foregoing, we find that the trial court did not err in determining that appellant's failure to communicate with his child for one year prior to the date the petition to adopt was filed was without justifiable cause. Therefore, appellant's consent to A.S.'s adoption was not required, and the first and third assigned errors are found not well-taken.

### Conclusion

**{¶ 39}** The judgment of the Fulton County Court of Common Pleas, Probate Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.        _____
                                             JUDGE

Arlene Singer, J.            

                                               _____
Thomas J. Osowik, J.                                          JUDGE
CONCUR.

                                               _____
                                             JUDGE